731 P.2d 84

**William J. SPAIN, Personal Representative of the Estate of Patricia L. Story, Plaintiff/Appellant,**

v.

**VALLEY FORGE INSURANCE COMPANY, a Pennsylvania corporation, Defendant/Appellee.**

**No. CV 86 0065–PR.**

Supreme Court of Arizona,
En Banc.

Oct. 14, 1986.

Supplemental Opinion Jan. 8, 1987.

Reconsideration Denied Jan. 8, 1987.

Leonard and Clancy, P.C. by Kenneth P. Clancy, Phoenix, for plaintiff/appellant.

Jennings, Strouss & Salmon by M. Byron Lewis, Stephen A. Myers, Phoenix, for defendant/appellee.

FELDMAN, Justice.

William J. Spain (Spain) and Valley Forge Insurance Company (Valley Forge) petitioned this court to review a court of appeals decision concerning the amount of uninsured motorist (UM) coverage recoverable by Spain. The court of appeals held that Valley Forge is potentially liable under its automobile insurance contract for only $15,000 of a $100,000 limit UM endorsement. This is so, the court reasoned, because of a contractual provision offsetting the available UM coverage by amounts already recovered under the liability coverage of the same policy. *Spain v. Valley Forge Insurance Co.*, 152 Ariz. 185, 731 P.2d 80 (App.1985).

We granted review to consider whether the UM offset provision violates the policy of the uninsured motorist statute, A.R.S. § 20–259.01 (Supp.1985). We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3), and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S. (Supp.1985).

### FACTS

On June 9, 1982, Patricia L. Story (Story), a passenger in a Subaru owned and driven by Estelle Billing (Billing), died from injuries she received when the Subaru collided with a car owned and operated by an uninsured motorist. For purposes of this action the parties have stipulated that both drivers were negligent. Billing's Valley Forge automobile insurance policy provided $100,000 liability coverage for bodily injury or death, $100,000 uninsured motorist protection, and medical payments coverage. Under the policy's definition, Story, a passenger, was an insured under the UM coverage.[1] The policy, however, contained standard insurance industry form language providing that the insurance company was obligated to pay only a "single limit" of $100,000 per accident. *See* 1 A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE, App. A (2d ed. 1985) (Personal Auto Insurance Form of Insurance Services Office); 8D J. APPLEMAN, INSURANCE LAW AND PRACTICE § 5128.55, at 181 (1981). The coverage terms provided that sums paid under the liability coverage reduce the limit of liability under the UM coverage.[2] Spain,

---

1. The uninsured motorist statute requires that any UM coverage purchased by an insured also cover omnibus insureds, such as a passenger. *See* A.R.S. § 20–259.01(B) (Supp.1985).

2. Relevant terms of the policy follow.
   Part A, liability coverage, provides in part:
   Limit of Liability. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:
   1. Covered persons;
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the auto accident.
   We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability.
   Part C, uninsured motorists coverage, provides:
   Limit of Liability. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
   1. Covered persons;
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the accident.
   Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

Story's personal representative, claimed that Billing, the host driver, had been negligent and was liable for tort damages. Valley Forge paid the $100,000 liability limit on this claim. Spain claimed also that the uninsured driver's negligence caused the accident, and demanded an additional $100,000 pursuant to the uninsured motorist endorsement.[3] Valley Forge refused on the ground that the policy's offset provisions prevent Spain from recovering more than $100,000 on the combined coverages.

Spain sought a declaratory judgment that Valley Forge was liable for the additional $100,000. The trial court granted summary judgment for Valley Forge. The court of appeals held that if both drivers had negligently caused the collision, both the liability and UM endorsements applied. 152 Ariz. at 187, 731 P.2d at 82. Even so, it reasoned that Spain could not recover the full $100,000 limit under each coverage because the insurance company had unambiguously limited its total liability by offsetting the amount paid under one coverage against amounts payable under the other coverage. *Id.* 152 Ariz. at 187–188, 731 P.2d at 82–83. The court concluded, however, that A.R.S. § 20–259.01(A) obligates an insurance company issuing motor vehicle liability policies to provide at least $15,000 of separate UM coverage. *Id.* Thus, Valley Forge was not free to eliminate UM coverage by offset, but could contract to limit its liability

for sums exceeding the $15,000 required by statute. In other words, if Spain can prove that his damages exceed $100,000, Valley Forge will be liable under the UM coverage for an additional $15,000 only. The court relied on *Arceneaux v. State Farm Mutual Automobile Insurance Co.*, 113 Ariz. 216, 550 P.2d 87 (1976) for its decision. 152 Ariz. at 188, 731 P.2d at 83.

The court of appeals also stated, without explanation, that A.R.S. § 20–259.01(B) does not apply to the facts of this case. 152 Ariz. at 188, 731 P.2d at 83. That statute requires an insurance company writing motor vehicle liability policies to offer in writing and, upon purchase by the insured, to provide its insured with uninsured motorist coverage covering all persons insured under the policy in an amount equal to whatever limits of liability coverage have been sold.[4] We requested supplemental briefs to address the question of whether recognition of the offset provisions of the Valley Forge policy offends A.R.S. § 20–259.01(B).

## LEGISLATIVE OBJECTIVES—UM COVERAGE

Uninsured motorist coverage is designed to protect insured victims from the negligence of uninsured motorists and "places the victim's insurer in the shoes of the tortfeasor as a source of payment to the

---

1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A....

   Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

3. The court of appeals also held that *underinsured* motorist coverage was unavailable to Spain because the driver of the other car was uninsured rather than underinsured.. 152 Ariz. at 186–187, 731 P.2d at 81–82 (citing *Evenchik v. State Farm Insurance Co.*, 139 Ariz. 453, 458, 679 P.2d 99, 104 (App.1984)). We accepted this appeal only on the uninsured motorist issue and, therefore, decline to comment on the court's resolution of the underinsured motorist coverage issue.

4. Every insurer writing automobile liability or motor vehicle liability policies, as provided in

subsection A of this section, shall also make available to the named insured thereunder and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.... At the request of the insured, the insured may purchase and the insurer shall then include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy in any amount up to the liability limits for bodily injury or death contained within the policy but not less than the limits prescribed in subsection A of this section.

A.R.S. § 20–259.01(B) (Supp.1985). The second sentence was added in 1982 and was not in effect when the accident occurred, but the amendment merely clarifies the subsection and does not change our analysis.

victim." 12A G. COUCH, CYCLOPEDIA OF INSURANCE LAW § 45:652, at 212 (2d ed.1981). The Arizona legislature has continually strengthened the protection available to those injured by the negligence of a driver with no insurance or insufficient insurance. Until 1966, automobile owners involved in an accident were required only to prove that they were insured or were financially able to pay the minimum sums required by A.R.S. §§ 28–1102 to 28–1174 (Supp.1969–70) ($10,000 per person and $20,000 per accident). In 1965, the legislature enacted the uninsured motorist statute to "close the gap" in the Financial Responsibility Act by protecting those who were injured by the negligence of a financially irresponsible motorist. A.R.S. § 20–259.01 (Supp.1969–70); *Transamerica Insurance Co. v. McKee*, 27 Ariz.App. 158, 551 P.2d 1324 (App.1976); *Kraft v. Allstate Insurance Co.*, 6 Ariz.App. 276, 431 P.2d 917 (1967), *modified on other grounds*, 6 Ariz. App. 326, 432 P.2d 470 (App.1967). Until 1972, an insured had the right to reject the offered uninsured motorist coverage. A 1972 amendment, however, required every motor vehicle liability insurer automatically to provide UM coverage of $15,000 in every policy, and to give the insured the option of purchasing up to $45,000 UM coverage. A.R.S. § 20–259.01 (Supp.1972–73). That same year, the legislature increased the minimum liability coverage limits to $15,000 per person and $30,000 per accident. A.R.S. §§ 28–1102 to 28–1174 (Supp.1972–73). In 1981, the legislature further strengthened the protection by requiring insurance companies automatically to provide in every policy $15,000 coverage each for UM and underinsured motorist coverage. In addition, the insurer was required to notify the insured in writing that he or she could purchase additional UM coverage up to the limits of the liability coverage. A.R.S. § 20–259.01 (Supp.1981–82). The next year, the legislature eliminated compulsory underinsured motorist coverage, but it has not altered the compulsory UM coverage provisions or the requirement that the insurer offer and, upon purchase by the insured, provide the insured with UM coverage up to the limits of the liability coverage. A.R.S. § 20–259.01 (Supp. 1985).

In our view, these amendments to the UM statute signify the legislature's strong commitment to require UM coverage and to allow those with foresight to protect themselves and their passengers with coverage above minimum limits, even if their insurance carrier previously would have been unwilling to write such a policy. A.R.S. § 20–259.01(B); 1 A. WIDISS, *supra*, § 2.12, at 43–44. Arizona's uninsured motorist statute provides greater protection than do the statutes of most states. 1 A. WIDISS, *supra*, §§ 2.1 to 2.6, at 21–35. Spain argues that enforcement of Valley Forge's offset provisions would avoid this clear legislative mandate and negate the uninsured motorist coverage which A.R.S. § 20–259.01(B) required Valley Forge to offer Billing and which she bought.

Even before the legislature strengthened § 20–259.01 in 1981, Arizona's courts held that the statute was remedial and should be liberally construed to carry out the intent of the legislature. *Williams v. Williams*, 23 Ariz.App. 191, 531 P.2d 924 (App.1975); *Reserve Insurance Co. v. Staats*, 9 Ariz.App. 410, 453 P.2d 239 (App. 1969). The statute establishes a public policy that every insured is entitled to recover under his or her UM coverage the damages he or she would have been able to recover from a negligent uninsured driver had that driver maintained a policy of liability insurance with a solvent company. *Calvert v. Farmers Insurance Co. of Arizona*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985); *Transportation Insurance Co. v. Wade*, 106 Ariz. 269, 273, 475 P.2d 253, 257 (1970). In effect, A.R.S. § 20–259.01(B) does no more than raise that entitlement from the minimum limit of $15,000 set by subsection (A) to an amount equal to the liability limits which the insured has bought. Thus, A.R.S. § 20–259.01(B) allows the driver to protect himself and his passengers—most often his own family and friends—from the loss by injury caused by uninsured drivers

to the same extent that he protects others from the risk of his own negligence.

The policy declarations statement that Billing received from Valley Forge shows that Billing was covered by $100,000 liability protection and $100,000 UM protection. Valley Forge has never claimed that these declarations were incorrect. Other than this declarations statement, the record contains no evidence of Billing's intent in purchasing the policy. There are no details of the circumstances under which Billing purchased the policy, and the record does not show whether Valley Forge offered the coverage and Billing then purchased it or whether Billing specifically requested UM coverage. However, Valley Forge does not claim that it erroneously or gratuitously provided Billing with coverage she did not purchase. Billing therefore insured herself and her passengers against two separate risks: the risk of liability if she should negligently injure someone, and the risk of having no source from which to recover damages caused by a financially irresponsible driver who might injure her and/or another insured under her policy. Here, both those risks occurred; Story allegedly died as a result of the negligent acts of two different drivers. As was Billing's *right* under A.R.S. § 20–259.01(B), she insured each risk separately for limits of $100,000.

An injured passenger may recover under both the liability and UM coverage provided by the host driver's policy if damages exceed the limit of one coverage. *Farmers Insurance Co. of Arizona v. Woodruff,* 127 Ariz. 196, 198, 619 P.2d 24, 26 (App. 1980); *Geyer v. Reserve Insurance Co.,* 8 Ariz.App. 464, 467, 447 P.2d 556, 559 (App. 1968); 8D J. APPLEMAN, *supra,* § 5128.-55, at 181–83. *Geyer* invalidated an offset provision similar to the one contained in Valley Forge's policy, holding that a passenger injured by the negligence of both the driver in whose car he was riding and an uninsured driver was entitled to the cumulative benefit of both the liability and UM provisions of the insured driver's policy. The uninsured motorist statute at that time provided that the insurer must offer, but the insured had a right to reject, $10,-000 UM coverage. The court recognized that although an insured could reject the UM coverage, once he or she had exercised the statutory right to buy the coverage, the insurer was not free to decrease it through the use of offset provisions. *Geyer,* 8 Ariz. App. at 467, 447 P.2d at 559.

■ The principle enunciated in *Geyer* applies equally to this case. A.R.S. § 20–259.01(B) provides that an insured may purchase UM coverage up to the limits of his or her liability coverage. The clear meaning of this provision is that an insured who exercises the statutory right to purchase UM coverage equal to the limit of liability coverage has available the total of the two in the event of an accident such as occurred here. Any attempt to reduce this coverage from the amount the legislature has given the insured the right to buy violates the uninsured motorist statute and is therefore void as against public policy. The uninsured motorist statute could, but does not, authorize or contemplate the offset claimed by Valley Forge. *Cf.* Cal.Insurance Code § 11580.2(h)(2) (Deering Supp.1986) and OR.REV.STAT. § 743.792 (1983) (allowing offsets).

Our interpretation is consistent with the "trend" toward invalidating limit-of-liability provisions which allow insurers to reduce limits of mandated coverage by setoff or "reduction" provisions such as those before us, *see* 1 A. WIDISS, *supra,* § 14.1, at 436, and with our decisions invalidating any infringement on an insured's right to purchase UM coverage. *E.g., Bacchus v. Farmers Insurance Group Exchange,* 106 Ariz. 280, 475 P.2d 264 (1970) (invalidating a provision offsetting medical payments against payments made under the UM coverage); *Calvert,* 144 Ariz. at 294, 697 P.2d at 687 (holding that the "other vehicle" exclusion violates the public policy underlying the UM statute); *Allied Mutual Insurance Co. v. Larriva,* 19 Ariz.App. 385, 507 P.2d 997 (App.1973) (invalidating an offset provision reducing amounts payable under UM coverage by amounts paid under workmen's compensation law); *Geyer, supra* (invalidating an offset provision similar to Valley Forge's); *accord, Missouri General Insurance Co. v. Youngblood,* 515 F.2d

1254 (5th Cir.1975); *Ciecka v. Transamerica Insurance Group*, 81 N.J. 421, 409 A.2d 272 (1979); *Taylor v. Great Central Insurance Co.*, 305 Minn. 446, 234 N.W.2d 590 (1975). *But see Criterion Insurance Co. v. Welish*, 167 Cal.App.3d 62, 212 Cal.Rptr. 882 (Cal.Ct.App.1985) (applying California law). In speaking about the precise problem presented by the facts in this case, Professor Widiss states that the insurer "should not be allowed to reduce its liability in this situation unless the insured-claimant has been fully indemnified" by the coverage limits already paid. 1 A. WIDISS, *supra*, § 14.6, at 457.

■ In *Bacchus*, we stated:

Permitting offsets of any type would allow insurers, by contract, to alter the provisions of the statute and to escape all or part of the liability which the Legislature intended they should provide. The medical payment coverage part of the policy is independent of the uninsured motorist coverage and should be treated the same as if it were carried with a different company.

106 Ariz. at 282, 475 P.2d at 266. The amendment to A.R.S. § 20–259.01(B) in 1981 manifests a clear legislative intent that each insured who purchased UM coverage in the amount of liability coverage would have available the total of the two coverages in cases in which the injury was caused by two negligent drivers. Any attempt, by contract or otherwise, to reduce any part of this amount violates the statute. *See, e.g., Bacchus*, 106 Ariz. at 283, 475 P.2d at 267.[5]

## CONCLUSION

For the foregoing reasons, we hold that the offset provision is void; we vacate the decision of the court of appeals and reverse the trial court's grant of summary judgment. The case is remanded for further proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

---

5. Of course, if an insured has been fully compensated under the liability coverage, then these payments may be credited under the UM coverage to avoid a duplication of benefits. *See* 8D J.

## SUPPLEMENTAL OPINION

FELDMAN, Justice. ·

Valley Forge has interpreted our use of the word "intent" in the opinion, slip op. at 9, to mean that "Billing's intent in purchasing the policy is now a material issue of fact that must be decided at the Superior Court." In a motion for clarification, Valley Forge asks us to concur with its interpretation.

■ In using the word "intent," we did not mean to intimate that Billing's subjective, uncommunicated desires were relevant. The statute requires the insurer to "make available" and in writing to "offer" and "at the request of" the insured to "include" uninsured motorist coverage in an amount equal to the liability limits. A.R.S. § 20–259.01(B) (Supp.1986). As long as Billing manifested an objective intent to purchase $100,000 uninsured motorist coverage, either by ordering that amount or by accepting it when tendered, that amount was purchased and Billing has a statutory right to that amount of coverage, so that it may not be offset against other coverage. If, on the other hand, Valley Forge could show that Billing actually ordered or requested only $15,000 uninsured motorist coverage but, mistakenly through a clerical or other error, Valley Forge issued a declaration page showing a larger amount, the amount of uninsured motorist coverage might still be in dispute. However, absent proof that its declarations statement was incorrect, Valley Forge must provide Billing with $100,000 liability coverage and $100,000 uninsured motorist coverage; it may not offset.

■ Spain has requested attorney's fees on appeal and in the superior court. Fees are allowed under A.R.S. § 12–341.01. The procedure for allowing fees on appeal is covered by Rule 21(c), Ariz.R.Civ.App.P.,

---

APPLEMAN, *supra*, at 183; 1 A. WIDISS, *supra*, § 14.6, at 457; 12A G. COUCH, *supra*, § 45:652, at 212–13 (1981).

17A A.R.S. (Supp.1986). The rule contemplates that applicants for attorney's fees will itemize the hours spent on the appeal, giving the date, the time spent, and the service performed. Acknowledging that he does not keep time records, Spain's counsel has attempted to reconstruct the time spent on the appeal. The rule contemplates contemporaneously prepared time records, and we are not prepared to accept estimates. Nevertheless, we are unwilling to hold that counsel fees can never be awarded to those who work on a contingent fee and do not keep time records. We simply are not equipped to engage in the factfinding process often made necessary by reconstructed records. Since the case is to be remanded, the trial judge may determine the amount of fees appropriate for services performed by counsel at both trial and appellate levels.

GORDON, C.J., HAYS (retired), CAMERON and HOLOHAN, JJ., concur.