755 P.2d 430

**Lisa Marie DURAN, a single person; Ricardo Juan Duran and Leslie Ellen Duran, husband and wife; Richard John Duran, Jr., a single man, Plaintiffs/Appellants,**

v.

**HARTFORD INSURANCE COMPANY, also known as Hartford Accident & Indemnity Company, a Connecticut corporation, Defendant/Appellee.**

**No. 2 CA–CV 87–0222.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 2, 1988.

Review Granted as to Issue I and Denied as to Issue II June 28, 1988.

Paul G. Rees, Jr., Tucson, for plaintiffs/appellants.

Mesch, Clark & Rothschild, P.C. by John K. Mesch, and Scott H. Gan, Tucson, for defendant/appellee.

## OPINION

LACAGNINA, Chief Judge.

Lisa Duran, seriously injured as a passenger in a one-car accident while her brother was driving their grandmother's car, and her parents, appeal from summary judgment declaring Hartford Insurance Company had satisfied all of its obligations under its policy covering the grandmother's car when it paid $100,000 under the liability section and $5,000 under the medical payments section of the policy.

Lisa claims that since her damages exceed $100,000, the limits of the policy, she is entitled to claim an additional $100,000 pursuant to the provisions for underinsured coverage. In addition, her parents claim $100,000 uninsured coverage for their loss of consortium arising from Lisa's permanent injuries.

The Durans argue that the Hartford policy was issued during the one year that underinsured motorist coverage was mandatory and therefore should be treated in the same manner as uninsured coverage. They argue any provision of the policy which provides for offsets or deductions from the provisions providing underinsured coverage is void and unenforceable. They also argue that since the parents' claim is separate from Lisa's claim, an additional $100,000 is available under the uninsured section because payment to Lisa exhausted the policy limits.

The trial court granted Hartford's motion for summary judgment based on the rationale of *Preferred Risk Mutual Insurance Co. v. Tank*, 146 Ariz. 33, 703 P.2d 580 (App.1985), which precluded stacking underinsured motorist coverage with liability coverage. The trial court found the offset provision of the policy, offsetting the $100,000 paid under the liability section against any underinsured coverage was enforceable under the circumstances of this case. We agree and affirm the trial court's judgment for the reasons stated and because the policy definition of an underinsured motor vehicle did not include a vehicle owned by the insured.

## FACTS

In 1982, Richard Duran negligently drove his grandmother's automobile in which his sister, Lisa, was a passenger, causing it to overturn and inflict permanent injuries upon his 16–year-old sister. Hartford paid $100,000 to Lisa, the limits for liability coverage under the policy, and $5,000 under the medical payments provision of the policy. This settlement was made on behalf of her negligent brother and was approved by the superior court. Thereafter, Lisa and her parents sued Richard for Lisa's injuries and for her parents' loss of consortium.[1]

---

1. This claim for damages was consolidated with a subsequent lawsuit filed by State Farm Mutual Automobile Insurance Company for declaratory judgment under the provisions of a policy of insurance owned by the Durans. The case before us filed by the Durans for declaratory judgment concerning the provisions of the Hartford policy owned by the grandmother, Helen Pierce, was consolidated with the other actions. This appeal is limited to the issues raised by the

## POLICY PROVISIONS PREVENTING STACKING OF UNDERINSURED MOTORIST COVERAGE VALID

Hartford's underinsured endorsement provided for limits of liability as follows:

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy; ....

Hartford paid $100,000 to Lisa under Part A, the liability provision, and exhausted any coverage under the underinsured motorist limits. Durans argue this offset provision is invalid based on the decision in *Spain v. Valley Forge Insurance Co.*, 152 Ariz. 189, 731 P.2d 84 (1986). *Spain* does not apply to the facts of the present case because it involved two separate tortfeasors, and the application of public policy considerations providing protection from the risk of injury by an uninsured motorist. The reasoning of *Spain* could not apply to a single tortfeasor situation.

Likewise, *Farmers Insurance Co. of Arizona v. Woodruff*, 127 Ariz. 196, 619 P.2d 24 (App.1980), and *Geyer v. Reserve Insurance Co.*, 8 Ariz.App. 464, 447 P.2d 556 (1968), are inapplicable because those cases involved two vehicles and two tortfeasors, one of whom had no insurance, and therefore, policy provisions attempting to offset payments made under the liability sections to defeat or reduce mandatory insurance coverage were properly held invalid. As *Spain* clearly states, "[t]he amendment to A.R.S. § 20–259.01(B) in 1981 manifests a clear legislative intent that each insured who purchased UM coverage would have available the total of the two coverages *in cases in which the injury was caused by two negligent drivers.* Any attempt, by contract or otherwise to reduce any part of this amount violates the statute." 152

Ariz. at 194, 731 P.2d at 89 (emphasis added).

The cases cited to us by Lisa all involve uninsured motorist coverage, and we are urged to follow the same reasoning in this case for underinsured coverage because it was mandatory during a window period between the time underinsured was first voluntary, then mandatory, and then voluntary again. Hartford argues we should disregard this argument because it was not raised by Duran at trial. Whether mandatory or not, whether specifically raised in the trial court or not, makes no difference. The facts of this case place it beyond the holding and rationale of the cases decided under mandatory uninsured coverage because here there is only one tortfeasor covered by $100,000 liability insurance to pay for damages suffered in the accident. None of the cases cited to us permit a passenger in a one-car accident to recover under the total limits of both the liability and uninsured motorist coverage. A single vehicle covered by more than liability coverage is not uninsured, and the uninsured provisions of the same policy providing liability coverage have no applicability. *Spain, supra; Calvert v. Farmers Insurance Company of Arizona*, 144 Ariz. 291, 697 P.2d 684 (1985); *Geyer, supra.*

The Durans have cited no cases which permit a passenger to recover from a single tortfeasor covered by a single policy under both the liability and underinsured provisions of the policy.

The trial court relied on the holding and rationale of *Preferred Risk* for the proposition that underinsured coverage cannot be stacked with liability coverage of the same policy where prohibited by a valid offset provision. In *Preferred Risk* the court said:

The statute relating to underinsured motorist coverage was clearly designed to permit the prudent insured to protect himself and his family and passengers against the possibility of injury caused by another motorist with insufficient in-

summary judgment granted Hartford on provisions of its policy, and the other two cases are

pending in superior court.

surance. This is a completely different type of insurance from liability insurance, which protects those who are injured by the negligence of the insured, and which is dealt with by the legislature in a separate statute. *See* A.R.S. § 28–1251 *et seq.* The exclusion chal-' lenged by the appellants does not improperly limit˙the scope of the coverage mandated by A.R.S. § 20–259.01(C) and (E); in fact, it achieves precisely the purpose envisioned by the legislature. When operation of the insured vehicle causes an injury, liability coverage is available to. the injured party. By refusing to pay underinsured motorist benefits in addition, that type of coverage is limited to the situation for which it was created—compensation for injuries caused by other motorists who are underinsured. Thus, although the statute lacks specific terms permitting the exclusion, we find it consistent with the legislative purpose.

The appellants also argue that the exclusion violates public policy, relying on decisions which have invalidated certain exclusions limiting coverage in uninsured motorist policies. We find the policy considerations discussed in those cases completely inapplicable to the problem before us. First, because the two types of insurance are fundamentally different, opinions analyzing uninsured motorist coverage do not consider problems arising only under the underinsured motorist provision. For example, the question whether a named insured should be allowed to stack his uninsured motorist coverage with liability coverage from his own policy simply cannot arise; an individual cannot be insured and uninsured at the same time. A person can, however, be insured but voluntarily choose to acquire liability coverage which later proves inadequate, giving rise to the problem at hand.

146 Ariz. at 36, 703 P.2d at 583. The court of appeals in *Preferred Risk* relied on decisions from three other states which concluded that underinsured coverage may not ‘be stacked so as to increase the liability coverage purchased by the insured. *Hoff-*

*pauir v. State Farm Mut. Auto. Ins. Co.,* 427 So.2d 560 (La.App.1983); *Myers v. State Farm Mut. Auto. Ins. Co.,* 336 N.W. 2d 288 (Minn.1983); *Millers Casualty Ins. C. v. Briggs,* 100 Wash.2d 1, 665 P.2d 891 (1983). The policy definition of an underinsured vehicle in *Preferred Risk* excluded the insured vehicle. The court concluded that the exclusion was valid and consistent with the purpose and policy of the legislature requiring the availability of underinsured motorist coverage. A similar exclusion appears in the Hartford policy in this case, and we hold the judgment of the trial court was correct for this additional reason. *Gibson v. Boyle,* 139 Ariz. 512, 679 P.2d 535 (App.1983). The Hartford policy excluded vehicles owned by the insured from the definition of "underinsured motor vehicles." For all of the reasons stated in *Preferred Risk,* we hold the exclusions and offset provisions are valid, and Hartford satisfied its liability to Lisa by paying her the limits of $100,000 under the liability section of the policy.

## UNINSURED COVERAGE CLAIMED BY PARENTS

■ Lisa's parents claim that because the limits under the liability section were paid to their daughter, their negligent son became uninsured for the damages they suffered for loss of consortium. The policy provided limits of liability as follows:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. Covered persons;
2. Claims made;

The liability coverage provided for maximum liability of $100,000 for each accident. The policy clearly states that $100,000 is the maximum limit of liability for all damages from any one accident, regardless of the number of claims made. This standard limitation is well recognized and limits Hartford's liability to the $100,000 paid to Lisa. 15A G. Couch, Cyclopedia of Insurance Law § 56.45 (2d ed. 1983). *See also Campbell v. Farmers Ins. Co.,* 155 Ariz. 102, 745 P.2d 160 (App.1987).

The Hartford policy excluded as an uninsured motor vehicle (1) any vehicle to which a policy applied unless the coverage was less than the statutory minimum and (2) a vehicle owned by the insured. The car being driven by the tortfeasor was covered by a policy providing $100,000 liability coverage and was owned by the insured. It was not an uninsured vehicle, and Lisa's parents have no claim against Hartford for the uninsured coverage. This holding is consistent with *Porter v. Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 475 P.2d 258 (1970), and *State Farm Mutual Automobile Ins. Co. v. Herron,* 123 Ariz. 315, 599 P.2d 768 (1979). In *Herron,* there was a finding of no applicable liability policy in effect; therefore, the injured party could claim coverage under the uninsured provisions of his own policy. In *Porter,* the insured party was allowed to collect the difference between damages paid by the tortfeasor's policy and his own policy.

The Durans posed the following question in their brief: "Where, then do Mr. and Mrs. Duran collect their claim?" The answer is found in all of the cases cited by the Durans in their brief and in this opinion: from coverage afforded by their own policy of insurance. We are aware from the record that the coverage afforded the Durans under their policy with State Farm, if any, is the subject of a pending action in the superior court.

In response to a *Darner*[2] argument, the trial court also ruled that no showing had been made that the named insured, Helen Pierce, reasonably expected stacking of underinsured coverage with liability coverage and that such an expectation would be unreasonable. We have reviewed the record, and we agree with the trial court.

Affirmed.

HOWARD, P.J., and HATHAWAY, J., concur.

---

**2.** *Darner Motor Sales v. Universal Underwriters,* 140 Ariz. 383, 682 P.2d 388 (1984).