796 P.2d 915

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff–Appellant, Cross Appellee,**

v.

**Sharon GILMORE and John Doe Gilmore, wife and husband, Defendants–Appellees, Cross Appellants.**

No. 1 CA–CV 88–318.

Court of Appeals of Arizona, Div. 1, Department A.

March 8, 1990.

Review Granted Sept. 25, 1990.

Rake, Copple, Downey & Black by William J. Downey, Phoenix, for appellant.

Jennings, Strouss & Salmon by Jefferson L. Lankford, and Feder Law Offices, P.A. by Harold Feder, Phoenix, for appellees.

## OPINION

SHELLEY, Judge.

Is an insurer providing general commercial liability insurance required to offer underinsured motorist (UIM) coverage pursuant to A.R.S. § 20–259.01(C)? The trial court answered in the affirmative and entered summary judgment in favor of the insured accordingly. For the reasons set forth below, we reverse and remand.

The facts, for purposes of appeal, are undisputed. Appellee Sharon Gilmore was the executive secretary and managed the day-to-day operations of the Arizona Association for Industrial Development (AAID). While driving her car during the course of her employment, Gilmore was seriously injured in an automobile accident caused by another driver. She recovered $50,000 in liability insurance from the other driver, as well as $50,000 in underinsured motorist coverage from her insurance policy covering the car she was driving. She then turned to AAID's insurer, appellant St. Paul Fire and Marine Insurance Company (St. Paul) seeking additional UIM coverage. The St. Paul policy did not, however, include UIM coverage. There is no dispute that Gilmore's injuries exceed the $100,000 she has thus far received.

The St. Paul policy explains in its introduction that it is a "multicover policy" which is intended to protect AAID's business property and to protect AAID against claims made by others. It provides standard fire insurance, property insurance and general liability coverage, including bodily injury and property damage, all in the single limit amount of one million dollars. In addition, the policy includes liability protection for "non-owned" automobiles, which provides "excess" coverage against bodily injury and property claims arising from automobile accidents involving AAID employees driving their own vehicles while on AAID business. Although the policy expressly states that "the owner of a covered auto under any circumstances" is not protected, St. Paul has conceded for purposes of appeal that Gilmore was a protected person under the policy at the time of the accident.

St. Paul filed a declaratory judgment action seeking a ruling that the policy does not provide UIM coverage for Sharon Gilmore and that St. Paul was not obligated to offer that coverage pursuant to A.R.S. § 20–259.01(C). It then moved for summary judgment and Gilmore filed a cross-motion for summary judgment. Initially, the

trial court granted St. Paul's motion. Gilmore filed a motion for reconsideration. The trial court reversed its order granting summary judgment in favor of St. Paul. Furthermore, the trial court granted and entered summary judgment in favor of Gilmore. St. Paul appealed.

The question on appeal is whether St. Paul was required by A.R.S. § 20–259.01(C) to offer UIM coverage when it issued the policy to AAID. If it was required to do so, but did not, it is undisputed that the coverage is imputed as a matter of law.

St. Paul argues that it was not required to offer UIM coverage because the AAID policy was neither an automobile liability nor a motor vehicle liability policy and that only those types of policies are required to comply with A.R.S. § 20–259.01(C). More specifically, St. Paul argues that A.R.S. §§ 20–259.01 and 28–1170 must be read *in pari materia,* and that, when they are so read, the only reasonable conclusion is that its policy was not required to comply with A.R.S. § 20–259.01.

Gilmore responds that recent Arizona case law forbids reading these two statutes together. The St. Paul policy, she argues, clearly provided liability coverage for accidents involving automobiles, and was therefore an automobile or motor vehicle liability policy. Thus, she continues, St. Paul was accordingly required by statute to offer UIM coverage. Since it did not, Gilmore concludes, the coverage must be imputed. Gilmore also cites recent Arizona case law that A.R.S. § 20–259.01 is to be broadly construed in favor of coverage. *See Brown v. State Farm Mutual Auto. Ins. Co.,* 163 Ariz. 323, 788 P.2d 56 (1989). Both parties refer to conflicting cases from other jurisdictions addressing this issue in the context of umbrella or excess liability policies. Before discussing these cases, however, we first look to Arizona law.

### Statutory Construction

This appeal can essentially be resolved on the question of whether the St. Paul policy is an "automobile liability" or a "motor vehicle liability" policy within the meaning of A.R.S. § 20–259.01(C), the Uninsured Motorist Act (UMA). That statute states, in pertinent part:

C. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. . . .

The UMA does not define "automobile liability" or "motor vehicle liability" policy. Gilmore maintains that these phrases are not ambiguous and are self-explanatory. Therefore, she concludes, there is no need to resort to rules of statutory construction to determine their meaning. We disagree, and find it is unclear from a reading of § 20–259.01(C) alone whether the St. Paul policy is the type of policy contemplated by the statute. We therefore turn to the rules of statutory construction to determine whether it is.

The term "motor vehicle liability policy" is defined in A.R.S. § 28–1170, which is part of the Safety Responsibility Act (SRA), formerly known as the Financial Responsibility Act. A.R.S. § 28–1101 *et seq.* A.R.S. § 28–1170 sets forth the following requirements for a motor vehicle liability policy:

**"Motor vehicle liability policy" defined**

A. A "motor vehicle liability policy" as the term is used in this chapter means an owner's or an operator's policy of liability insurance, . . .

B. The owner's policy of liability insurance must comply with the following requirements:

1. It shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted. . . .

2. It shall insure the person named in the policy as the insured and any other person, as insured, using the motor

vehicle or motor vehicles with the express or implied permission of the named insured....

C. The operator's policy of liability insurance shall insure the person named as insured in the policy....

D. The motor vehicle liability policy shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged for the policy, the policy period and the limits of liability and shall contain an agreement or be endorsed that insurance is provided under the policy in accordance with the coverage defined in this chapter as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this chapter.

St. Paul argues that its policy is not a motor vehicle liability insurance policy as defined in A.R.S. § 28–1170 because it did not designate specific vehicles or drivers to be covered by the policy, and it did not comply with the statute's other requirements. If its policy was not a motor vehicle liability policy within the meaning of A.R.S. § 28–1170, St. Paul concludes, it could not be one under § 20–259.01(C) because the two statutes must be read *in pari materia.*

■ The cardinal rule of statutory interpretation is to determine and give effect to the legislative intent. *Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). The purpose of the SRA is to protect the public using the highways "from financial hardship which may result from the use of automobiles by financially irresponsible persons." *Schecter v. Killingsworth,* 93 Ariz. 273, 280, 380 P.2d 136, 143 (1963); *see Chase v. State Farm Mut. Auto. Ins. Co.,* 131 Ariz. 461, 463, 641 P.2d 1305, 1307 (App.1982). The subsequently enacted "UMA was intended *to close the gap* in protection offered by the SRA by requiring insurance companies issuing automobile liability policies to include coverage for injuries suffered by their insureds for damages caused by uninsured motorists." *Id.* (Emphasis added.) Uninsured motorist insurance (UM) is mandatory in the minimum amount of required liability coverage under A.R.S. § 28–1170, but the insurer must offer the insured the option of purchasing UM coverage up to the liability limits of his policy. A.R.S. § 20–259.01(A), (B).

As an additional gap filler, the insurer, in addition to the mandatory coverage required by A.R.S. §§ 20–259.01(A) and 28–1102,

> shall also make available to the named insured thereunder and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

A.R.S. § 20–259.01(B).

With respect to UIM coverage, there is no mandatory minimum coverage but there is a mandatory offering requirement. It also requires an affirmative request by the insured for coverage. If it is requested by the insured, the request must include the desired amount up to but not exceeding the liability limits of the policy before the company has a duty to include that coverage within the policy. A.R.S. § 20–259.01(C).

Because they are so closely related, the SRA and UMA are generally read *in pari materia. See State Farm Mutual Auto. Ins. Co. v. Eden,* 136 Ariz. 460, 666 P.2d 1069 (1983). Gilmore, however, relying on *Employers Mut. Cas. Co. v. McKeon,* 159 Ariz. 111, 765 P.2d 513 (1988), contends that the two statutes should *not* be read *in pari materia.* The question before the court in *McKeon* was whether the insurer could exclude UM coverage for a named driver who was validly excluded from the policy's liability coverage. The court stated that the SRA statutes and the UM statutes were enacted "at different times to protect different interests. *Id.* at 114, 765 P.2d at 516. It concluded that, because of the different purposes of UM and liability coverages, the named driver exclusion, which was expressly permitted for liability coverage under A.R.S. § 28–1170, but not referred to in the UMA, was *not* permitted for UM coverage required by A.R.S.

§ 20–259.01(C). While noting that the two statutes were neither ambiguous nor conflicting, the court said that the "application of the *in pari materia* doctrine to two statutes enacted at different times to deal with different problems, brings more confusion than enlightenment." *Id.*

The court in *McKeon* did not mention the supreme court opinion and it did not overrule *Eden.* In *Eden,* the court stated:

> The argument that an injured person should be allowed to recover under his uninsured motorist coverage at least the difference between his higher limits and the liability coverage of a tortfeasor insured within the minimum amounts required by the Financial Responsibility Law was rejected by the Court of Appeals in *Harsha v. Fidelity General Insurance Company,* 11 Ariz.App. 438, 465 P.2d 377 (1970). That court said:
>
> > *The reference in the statute [A.R.S. § 20–259.01] to the minimum limits of liability insurance required by A.R.S. Sec. 28–1142, subsec. C indicates the complementary character of the legislation vis-a-vis the financial responsibility statutes* and furnishes a concisely ascertainable standard for determining insured or uninsured status. The fact that other courts have harmonized the two types of legislation and held a tort-feasor 'uninsured' to the extent that his liability coverage is under their financial responsibility act limits only reinforces the conclusion that the coverage requirements therein are the pertinent and only criteria. If our legislature had intended to create a sliding-scale, after-the-fact, severity-of-injury-determined concept of when a motor vehicle was or was not insured and to what extent, it would have expressed itself in appropriate language.
>
> *Id.* at 440, 465 P.2d at 379.
>
> ....
>
> *By statute and case law, uninsured motorist coverage is interwoven with the Financial Responsibility Act.*

136 Ariz. at 461–62, 666 P.2d at 1070–71 (emphasis added).

The court in *McKeon* dealt with a question involving an exclusion expressly allowed under the SRA, but not referred to in the UMA. This would necessarily involve a more complex analysis, far more to the heart of the intent of each act and the types of coverages provided, than the question of whether a definition in one statute applies to the other.

When the UMA's purpose of filling the gap left by the SRA is considered, the only logical inference is that the reference to automobile and motor vehicle liability policies was to policies issued pursuant to the SRA. By requiring such policies to provide minimum UM coverage, and to offer both UM and UIM coverage up to the amount of liability coverage, the UMA could accomplish its acknowledged purpose of providing additional protection for insureds that was neither required nor available under the SRA.

In *McKeon,* our supreme court had before it only the question of whether the named driver exclusion permitted by the SRA could be read *in pari materia* with the UM statute so that the named driver exclusion would exclude that driver from recovering from an uninsured motorist. Obviously, the purpose of the named driver exclusion permitted by the SRA was intended to allow insurance companies to refuse coverage to high-risk drivers so that they were not covered with respect to their own negligence. This same purpose would not apply to UM coverage when the excluded named driver under the SRA was not at fault.

In this case, we are not concerned with reading into the UM statute an exclusion permitted by the SRA with its attendant public policy problems. The question before the court is the definition of a "motor vehicle liability policy" which is the term used in both the UM and SRA statutes.

If the legislature intended that any insurance policy providing any type of motor vehicle liability coverage be required to adhere to § 20–259.01, it could have used language to that effect instead of using a specific term defined in a closely interwoven section of the Arizona Revised Statutes.

For example, an Illinois statute states that "no policy insuring against loss ... shall be renewed or delivered or issued ... unless ..." UM coverage is provided. Ill.Rev. Stat.1979, ch. 73, § 755a–2.

In addition, subsection (G) of A.R.S. § 28–1170 states that "[w]ith respect to a policy which grants the excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section." This suggests that the phrase "motor vehicle liability policy" has a specifically limited meaning.

■ We conclude that the term "motor vehicle liability policy" as used in A.R.S. § 20–259.01 was intended to have the same meaning as that same term pursuant to A.R.S. § 28–1170. This conclusion is in accordance with our supreme court's statement in *Eden* which we have heretofore quoted: *"By statute and case law, uninsured motorist coverage is interwoven with the Financial Responsibility Act."* 136 Ariz. at 462, 666 P.2d at 1071 (emphasis added).

■ The same is true with respect to UIM coverage. The excess portion of St. Paul's policy, which did not designate specific vehicles or drivers, or otherwise comply with A.R.S. § 28–1170, was not a motor vehicle liability policy within the meaning of A.R.S. §§ 28–1170 or 20–259.01.

We note that A.R.S. § 20–259.01 uses the term "automobile liability or motor vehicle liability policy" throughout the section. Thus, the question remains whether an "automobile liability" policy is different from a "motor vehicle liability" policy and, if so, whether the excess portion of the St. Paul policy is an automobile liability policy. Again, if it is an automobile liability policy, it would be required to provide UM coverage in minimum amounts, and offer UM and UIM coverage up to the liability limits of the policy.

In contrast to "motor vehicle liability policy," the term "automobile liability policy" is not defined in any statute. A.R.S. § 28–1251(A)(1), however, reads:

A. Every motor vehicle operated on any highway in this state shall be covered by one of the following:

1. A motor vehicle or automobile liability policy which provides limits not less than those prescribed in § 28–1170.

In addition, Arizona cases have referred to insurance policies issued in compliance with the SRA and UMA interchangeably as automobile or motor vehicle liability policies. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Wilson,* 162 Ariz. 251, 254, 782 P.2d 727, 730 (1989) (A.R.S. § 20–259.01(A) requires "any motor vehicle policy issued in this state [to] include UM coverage"); *Employers Mut. Cas. Co. v. McKeon,* 159 Ariz. 111, 765 P.2d 513 (references to "automobile insurance" and "motor vehicle liability policy"); *Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 731 P.2d 84 (1986) (automobile insurance policy); *Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 697 P.2d 684 (motor vehicle liability policy); *Campbell v. Farmers Ins. Co.,* 155 Ariz. 102, 745 P.2d 160 (App.1987) (automobile liability policy); *State Farm Mut. Auto. Ins. Co. v. Janssen,* 154 Ariz. 386, 742 P.2d 1372 (App. 1987) (automobile liability policy). It is significant, too, that every case we have reviewed concerning UM or UIM coverage has involved a policy—motor vehicle or automobile liability—issued in compliance with the SRA, as opposed to the type of policy at question in this case.

The term "motor vehicle" is defined as "any self-propelled vehicle," A.R.S. § 28–101(25), which obviously includes automobiles. The reverse, however, is not necessarily true. For example, a bus would not be considered an automobile, although it would be considered a motor vehicle. The two terms, therefore, are not synonymous; automobiles are a subset of motor vehicles. However, in light of the reference to automobile liability policies in A.R.S. § 28–1251 in conjunction with a reference to motor vehicle liability policies as specified in A.R.S. § 28–1170, any distinction between the two is insignificant for purposes of this analysis. We also note that A.R.S. § 20–259.01(A) reads:

No *automobile liability* or *motor vehicle liability policy* insuring against loss resulting from *liability* imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a *motor vehicle* shall be delivered or issued for delivery in this state, with respect to any *motor vehicle* registered or principally garaged in this state, unless coverage is provided in the policy or supplemental to the policy, in limits for bodily injury or death prescribed in subsection B of this section, but not less than the limits prescribed in § 28–1102, under provisions filed with and approved by the director, for the protection of persons insured who are legally entitled to recover damages from owners or operators of uninsured *motor vehicles* because of bodily injury, sickness or disease, including death, resulting therefrom. For the purposes of the coverage provided for pursuant to this section, 'uninsured *motor vehicles*,' subject to the terms and conditions of such coverage, includes any insured *motor vehicle* if the liability insurer of the vehicle is unable to make payment on the liability of its ·insured, within the limits of the coverage, because of insolvency.

*Id.* (emphasis added). This subsection uses the term "automobile liability" only in the first sentence; thereafter the term "motor vehicle" is repeated five times. Subsection B, having to do with underinsured coverage uses the term automobile liability or motor vehicle liability policies without repetition of either term, but it does refer to motorist coverage twice which is the equivalent of the term motor vehicle liability coverage. The term automobile liability policy was not intended to indicate a different type of policy from a motor vehicle liability policy. The distinction pertains to the type of vehicle to be insured, as opposed to the type of policy insuring the vehicle.

We have been able to find only one case that has addressed this exact question, *Trinity Universal Ins. Co. v. Metzger*, 360 So.2d 960 (Ala.1978). In that case, the Alabama Supreme Court had to determine whether a personal excess umbrella policy was an automobile liability or motor vehicle liability policy within the meaning of a statute requiring such policies to include UM coverage, unless rejected by the insured. The court noted:

First it is clear that it is not a 'motor vehicle liability policy' because this term is defined in Tit. 36, § 74(62) as a policy insuring specific automobiles and individuals subject to limits of $5,000/$10,000/$1,000 . . . . Trinity Universal's umbrella policy refers to an underlying policy with Aetna rather than any specific automobile, and sets limits far above the statutory requirements.

Is this umbrella policy, nevertheless, an 'automobile liability policy' and therefore subject to the statute? This court has in the past drawn a distinction between 'automobile liability policies' and 'motor vehicle liability policies,' but we think that, for the purposes of this case, any fine distinctions that may exist between these two terms are not relevant. The term 'automobile liability policy' as used in our uninsured motorist statute, Tit. 36, § 74(62a), contemplates a policy similar in nature to that defined in Tit. 36, § 74(62).

*Id.* at 961–62 (citations omitted).

Both automobile and motor vehicle liability policies must comply with A.R.S. § 28–1251(A) and § 28–1170, as well as A.R.S. § 20–259.01. We conclude that the term "automobile liability policy" as used in A.R.S. § 20–259.01 has the same meaning as "motor vehicle liability policy."

It is apparent that the St. Paul policy, although it provides excess liability coverage for damages caused by the use of non-owned automobiles, was neither a motor vehicle liability nor an automobile liability policy, as those terms are used in A.R.S. § 20–259.01(C). Therefore, St. Paul was not required to offer UIM coverage up to the liability limits.

Furthermore, the intent and purpose of umbrella policies is entirely different from the intent and purpose of primary liability policies. We agree with the following statement made in 8C J. Appleman *Insur-*

*ance Law and Practice,* § 5071.65 at 107 (1981):

> Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium. Assuming one's automobile and homeowner's policies have liability limits of $100,000 or even $500,000, the umbrella policy may pick up at that point and cover for an additional million, five million, or ten million. It may assume as a primary carrier certain coverages not included elsewhere, such as invasion of privacy, false arrest etc., but there is no intention to supplant the basic carriers on the homeowners or automobile coverages. Therefore, these should not even enter into our current consideration.

The primary motor vehicle liability policy of Gilmore was all that was necessary to comply with the requirements of the UMA and the public policy upon which it is based as it allowed the insured to buy underinsurance coverage up to the liability limits of the insured's policy.

### Arizona Case Law

Gilmore nevertheless argues that the trend in Arizona is to expand UM and UIM coverage and to construe any doubts in favor of coverage. *See e.g., Brown,* 163 Ariz. at 326–329, 788 P.2d at 59–62; *McKeon,* 159 Ariz. at 114, 765 P.2d at 516 ("narrowing uninsured motorist coverage contravenes a long-standing legislative policy to guarantee all insureds protection against uninsured motorists. The statutes on the subject are remedial, and we have liberally construed them in the past to further the legislature's intent to aid all victims of financially improvident drivers.") (citation omitted); *Spain,* 152 Ariz. at 192, 731 P.2d at 87.

Both parties, St. Paul in particular, extensively analyze the facts and holdings of many of the Arizona cases that have construed UM or UIM coverage in recent years, in an attempt to analogize them to this case. *See e.g., Higgins v. Fireman's Fund Ins. Co.,* 160 Ariz. 20, 770 P.2d 324 (1989); *Spain,* 152 Ariz. 189, 731 P.2d 84;

*Mason v. State Farm Mut. Auto. Ins. Co.,* 148 Ariz. 271, 714 P.2d 441 (App.1985); *Preferred Risk Mut. Ins. Co. v. Tank,* 146 Ariz. 33, 703 P.2d 580 (App.1985); *Cole v. State Farm Mut. Auto. Ins. Co.,* 145 Ariz. 578, 703 P.2d 522 (App.1985); *Transamerica Ins. Co. v. McKee,* 27 Ariz.App. 158, 551 P.2d 1324 (1976). We have reviewed each of these cases, and, suffice it to say, that although indicative of the trend toward an expansive approach to UM and UIM coverage, none involves facts even remotely analogous to the facts of this case. Virtually all of them involve questions concerning the applicability or validity of an exclusion. None of them, therefore, is helpful to the resolution of this case. Other jurisdictions have, however, been presented with similar questions, and we now turn to those cases.

### Other Jurisdictions

The cases from other jurisdictions, most of which involve umbrella policies providing excess coverage, are conflicting. A series of Florida cases held that umbrella policies, obtained in addition to underlying automobile liability policies which included UM coverage, were required to offer UM coverage up to the liability limits. *Chicago Ins. Co. v. Dominguez,* 420 So.2d 882 (Fla. App.1982); *First State Ins. Co. v. Stubbs,* 418 So.2d 1114 (Fla.App.1982); *Cohen v. American Home Assur. Co.,* 367 So.2d 677 (Fla.App.1979). Florida law requires all motor vehicle liability policies to be issued with UM coverage in the same amount as the liability limits, *unless rejected* by the insured. Fla.Stat. § 627.727. The courts reasoned that the umbrella policies provide liability coverage for motor vehicle accidents, and that the statute "delineates no exceptions." *Dominguez, id.* at 883. Another Florida court noted that the policy behind the Florida statute requiring insurers to provide UM coverage up to the liability limits, unless rejected by the insurer, is to "allow *full* recovery under the terms of any applicable policies when a person is injured by an uninsured motorist." *Continental Ins. Co. v. Howe,* 488 So.2d 917, 920 (Fla.App.1986) (emphasis in original).

Similarly, a Louisiana court held that, in light of its statute requiring liability policies to provide UM coverage in at least the liability limits of the policy, a commercial umbrella policy would be required to include the option of UM coverage. *Southern American Ins. Co. v. Dobson*, 441 So.2d 1185 (La.1983) (upon rehearing). That court relied, in part, on Louisiana's policy of allowing the insured the option of choosing UM coverage up to the maximum limits of his liability coverage. *Id.* at 1191. The court distinguished various cases from other jurisdictions which had reached a contrary result on the basis that the statutes in those states only required UM coverage in the minimum amounts of liability coverage required by law. *Id.; see also Cincinnati Ins. Co. v. Siemens*, 16 Ohio App.3d 129, 132, 474 N.E.2d 655, 657 (App.1984) (personal umbrella policy which covered liability arising from the use of a motor vehicle was "automobile liability insurance" which was required to offer of UM coverage.)

Other courts have reached the opposite conclusion. For example, in *Moser v. Liberty Mut. Ins. Co.*, 731 P.2d 406, 409 (Okla. 1986), an Oklahoma court held that the statutory requirement of providing UM coverage in the minimum liability amount required by law, but with an option to purchase up to the liability limits purchased, was satisfied by the underlying, primary policy. Umbrella policies providing excess liability coverage in the event of catastrophic losses were therefore not required to offer UM coverage. The court concluded that UM coverage in an umbrella policy was "beyond the contemplation, scope and intent of [the statute], which we find to be limited in application to policies insuring against primary liability...." *Id.* at 410. In a footnote, the court noted that the purpose of the umbrella policy "was at most *tangentially related to automobile liability*. In contracting for umbrella liability coverage the insured sought protection from catastrophic liability arising from any of the varied aspects of its business operations." *Id.* at 410 n. 16 (emphasis added).

A federal court, construing Delaware law, also held that an umbrella policy need not offer UM coverage, despite a statute requiring automobile liability policies to include UM coverage in the minimum amount of required liability coverage and to offer UM coverage up to the liability limits. *O'Hanlon v. Hartford Acc. & Indem. Co.*, 639 F.2d 1019 (3rd Cir.1981). The court reasoned:

Policies such as the INA umbrella policy under consideration here, with respect to their automobile coverages, would not exist but for underlying primary auto policies to which they provide excess liability insurance. Primary insurance policies in Delaware, by their very existence, provide insureds with all of the benefits accorded under § 3902. To place umbrella policies within the ambit of section 3902 would be to apply that section to require UM coverage in addition to that provided by primary policies.

*Id.* at 1027.

In *Trinity*, 360 So.2d 960, the Alabama Supreme Court, after finding that a personal excess umbrella policy was neither an automobile nor motor vehicle liability policy, concluded:

Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against catastrophic loss ... The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk. *The umbrella policy issued by Trinity Universal is an inherently different type of insurance from an automobile or motor vehicle liability policy, and consequently does not come within the scope of the uninsured motorist statute.*

360 So.2d at 962 (emphasis added); *see also Hartbarger v. Country Mut. Ins. Co.*, 107

Ill.App.3d 391, 63 Ill.Dec. 42, 437 N.E.2d 691 (1982) (citing *Trinity*).[1]

Here, too, Gilmore had the benefit of her own UIM coverage, which she opted to purchase pursuant to A.R.S. § 20–259.01(C), and under which she received payment. The UMA's intent—to make available UIM coverage up to liability limits in the amount purchased by the insured—was fulfilled. As in *Moser*, the St. Paul policy was only "tangentially related" to automobile or motor vehicle liability. Finally, the St. Paul policy was neither an automobile nor motor vehicle liability policy, as those terms are used in A.R.S. § 20–259.01. It was therefore not obligated to comply with the requirement in § 20–259.01(C) that it offer UIM coverage. We note that our holding, despite St. Paul's urging, is not based on any distinction between UM and UIM coverages, and specifically the fact that UM coverage is mandatory, A.R.S. § 20–259.01(A), and UIM coverage is optional, although it must be offered. A.R.S. § 20–259.01(C). The purpose of both types of coverages is essentially the same.

Finally, in light of our conclusion, we do not reach St. Paul's arguments concerning the amount of the premium or that the "stacking" of UIM coverages should not be permitted under A.R.S. § 20–259.01(F).

### ATTORNEY'S FEES

Both parties request attorney's fees on appeal pursuant to A.R.S. § 12–341.01. In our discretion, both requests are denied.

### CONCLUSION

In light of the statutory language, the policy, and the circumstances of this case, we conclude that St. Paul was not required to offer UIM coverage with the policy it issued to AAID. The trial court's ruling to the contrary is reversed, and this matter is remanded for proceedings consistent with this opinion.

CONTRERAS, P.J., and EHRLICH, J., concur.

---

1. St. Paul's reliance on *Furlough v. Transamerica Ins. Co.,* 203 Cal.App.3d 40, 249 Cal. Rptr. 703 (1988), in its reply brief is misplaced because the California statute requiring all motor vehicle liability policies to provide UM coverage expressly excludes from the requirement excess or umbrella policies. 249 Cal.Rptr. at 707 (citing Ins.Code, § 11580.2, (a)(1); *Wiemann v. Industrial Underwriters Ins. Co.,* 177 Cal. App.3d 38, 43–44, 222 Cal.Rptr. 705 (1986)).