787 P.2d 1066

**George RASHID, a single man, Plaintiff/Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant/Appellant.**

No. CV–89–0219–PR.

Supreme Court of Arizona.

Feb. 8, 1990.

ance Company (State Farm) was not liable for his uninsured motorist (UM) claim. *See Rashid v. State Farm Mut. Auto. Ins. Co.,* No. 1 CA–CV 88–0346 (Ct.App. Apr. 18, 1989) (memorandum decision). We took review to determine whether State Farm's UM "other insurance" clause violates public policy. Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## I. FACTS AND PROCEDURAL HISTORY

The facts necessary for resolution of the issue are undisputed. Rashid was a passenger in a car driven by Spence Morris (Morris) that was involved in an accident with a car driven by an uninsured motorist. Morris's "host" vehicle was insured by Safeco Insurance Company (Safeco). Safeco provided UM coverage of $50,000. The policy Rashid purchased from State Farm included $30,000 in UM coverage. Rashid's damages exceeded $50,000.

Safeco paid its UM limit of $50,000 to Rashid. Invoking its other insurance clause, State Farm refused to pay the balance of Rashid's damages. Rashid sought declaratory relief in the trial court to determine whether State Farm could legally refuse to provide excess coverage.

The parties filed motions for partial summary judgment regarding State Farm's liability. The trial court found State Farm's other insurance provision void. State Farm appealed. The court of appeals acknowledged that we have recently invalidated other insurance clauses similar to the one at issue as contrary to public policy. Memo. dec. at 3 (citing *Arizona Prop. & Cas. Ins. Guar. Fund v. Herder,* 156 Ariz. 203, 751 P.2d 519 (1988)). The court stated, however, that "even though the discussion of public policy in *Herder* supports appellee Rashid's argument, *Herder* does not expressly overrule *Transportation Insurance Company v. Wade,* 106 Ariz. 269, 475 P.2d 253 (1970)." Memo. dec. at 3. Because it felt constrained by *Wade,* the court of appeals reversed. *Id.* at 4.

Gilcrease & Martin by Glynn W. Gilcrease, Jr., Tempe, for plaintiff/appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith and Steven D. Smith, Phoenix, for defendant/appellant.

FELDMAN, Vice Chief Justice.

George Rashid (Rashid) petitions us to review a court of appeals decision holding that State Farm Mutual Automobile Insur-

Rashid petitioned for review. We must decide whether State Farm's UM other insurance clause is enforceable and whether *Transportation Insurance Company v. Wade* has continuing vitality in light of our recent decisions construing A.R.S. § 20–259.01 (UM/UIM Act).

## II. DISCUSSION

### A. State Farm's Position

As the host vehicle's insurer, Safeco's UM coverage was primary. A.R.S. §§ 28–1170.01 and 20–1123.01 (primary coverage follows the vehicle). Thus, State Farm argues it provided only excess coverage and was obliged to pay only the amount by which its coverage exceeded the primary coverage.[1] State Farm claims *Wade* and its progeny have upheld the validity of such clauses, and that the trial court improperly relied on a recent supreme court case, *Spain v. Valley Forge Insurance Co.*, 152 Ariz. 189, 731 P.2d 84 (1987), when it found its other insurance clause unenforceable.

In *Spain*, we held that an insurer could not offset payments made under the liability coverage for the negligence of the host driver against the limits of the UM coverage for the negligence of a second and uninsured driver. The injured party was entitled to recover under both portions of

the policy, so long as his recovery did not exceed his damages. 152 Ariz. at 194, 731 P.2d at 89. State Farm contends that *Spain* is inapposite because it considered only the validity of an attempt to offset one type of coverage against the other and did not address the validity of an other insurance clause dealing with similar coverages.

State Farm concedes it cannot offset mandatory coverages. *See Bacchus v. Farmers Ins. Group Exch.*, 106 Ariz. 280, 475 P.2d 264 (1970). Nonetheless, it claims an insurer may invoke its escape clause once the insured has collected from another insurer an amount equal to the mandatory UM coverage he had purchased from his own carrier. State Farm thus distinguishes this case from *Spain* because it is not attempting to deny Rashid the benefits he purchased. Rashid collected $50,000 UM coverage from Safeco and had purchased only $30,000 limits from State Farm. State Farm contends Rashid would have cause to complain only if the host's UM insurance limits were less than those Rashid purchased from State Farm.

Thus, the question at hand is whether the insurer can limit the mandatory coverage it provides when another policy has provided similar coverage to the insured, or does the insured have the right to aggregate[2] his UM limits with those covering

---

1. The State Farm policy stated:

   > 3. If the *insured* sustains *bodily injury* while *occupying* a vehicle not owned by *you, your spouse* or any *relative*, this coverage applies:
   >    a. as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but
   >    b. only in the amount by which it exceeds the primary coverage.

   (Emphasis in original.) The provision is an adaptation of the 1966 STANDARD FORM, Part VI: Additional Conditions: E. Other Insurance. This type of combination provision is generally referred to as an "excess/escape" clause. 1 A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST COVERAGE § 13.3, at 386–87 (2d ed. 1987). It is excess because it limits liability to situations when its coverage exceeds primary coverage. *Id.* It is called an "escape" provision because the clause allows the insurer to escape liability unless its coverage limit exceeds the other insurance applicable to the accident. *Id. See also* J. Kurtock, *Overlapping Liability Coverage—The "Other Insurance" Provision*, 25 FED'N INS. COUNS. Q. 45, 49 (Fall 1974).

2. The process may be described as "stacking." *See* 12A G. COUCH, CYCLOPEDIA OF INSURANCE LAW § 45:628, at 77 (2d rev. ed. 1981). It may involve either intra-policy stacking or inter-policy stacking. In inter-policy situations, such as the present, similar coverages are available through separate policies. We prefer to use the term "aggregation" to describe combining the limits of separate policies issued by different insurers, and the term "stacking" to describe attempts to combine the coverages of a single policy or multiple policies issued by a single insurer because confusion often arises as to the rules pertaining to one insurer as opposed to those applying to two. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 328–329, 323 n. 7, 788 P.2d 56, 61–62 n. 7 (1989); 8C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 5106, at 535 (1981).

   Of course, the court will prohibit stacking when an insured has purchased multiple coverages from *one* insurer against the same event and seeks to stack the limits provided by any single coverage. In fact, the legislature has ex-

the same loss and available from another, primary policy?

## B. Other Insurance Clauses

We have recently reviewed the historical origins as well as the purpose and nature of other insurance clauses. *See Brown v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 323, 788 P.2d 56 (1989) (citing *State Farm Mut. Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 717 P.2d 449 (1986)). In *Brown,* we noted that insurers may properly invoke other insurance provisions to prevent an insured from obtaining double recovery. *Brown,* 163 Ariz. at 328, 788 P.2d at 61. We concluded, however, that the insurer could not apply an excess/escape provision of an other insurance clause to reduce the UIM coverage purchased by an insured who was not fully indemnified. Application of the clause violated the public policy embodied in A.R.S. § 20–259.01 (UM/UIM Act), which gave an insured the right to purchase UIM, a form of excess coverage. The insured had the right, therefore, to aggregate the limits of his UIM coverage with the UIM available from the other insurance. *Id.*

Of course, *Brown* was a UIM case, where the coverage in question was intended to be excess and apply *in addition to* primary coverage. Here, we deal with UM coverage in a case where the insured bought a $30,000 limit UM policy and has received all of that—and more—in UM benefits from the primary carrier. In essence, State Farm argues that it should pay nothing because this insured got more than he paid for, albeit from another insurer.

We appreciate that when an insured aggregates UM policies he is often in a better position than he would have been if the other motorist had been properly insured and the UM coverage thus had been inapplicable.[3] Professor Widiss rejects the notion that this argument should permit enforcement of the excess/escape provision of other insurance clauses, stating:

> The conclusion which insurance companies draw from this fact—that they should be allowed to reduce their liability—does not follow. A premium has been paid for each of the coverages and the insurance policy has been issued. It seems both equitable and desirable to permit recovery under more than one coverage *until the claimant is fully indemnified.* This is not the same as stacking medical expenses insurance coverages so that a claimant recovers for the same out of pocket costs several times. The rule that allows medical expenses insurance to be stacked is appropriately criticized, and the *insurance companies should be entitled to curtail duplication of benefits* by limitations in medical expense insurance coverage.

1 A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST COVERAGE Comment, at 403–04 (2d ed. 1987)

---

pressly provided that an insurer may prohibit such a result. *See* A.R.S. § 20–259.01(F). *See also* 3 R. LONG, LAW OF LIABILITY INSURANCE § 24.24, at 137 (1987) ("Analytical problems arise in that many of the pro rata cases involve multiple coverage under one policy, that is, intra-policy stacking, and not multiple policies. This distinction is critical since a pro rata clause might be invalid in multiple-policy situations but valid in intra-policy stacking cases.").

We have previously upheld provisions forbidding the stacking of UIM and liability coverage in a single-tortfeasor, single-policy case. *See Duran v. Hartford Ins. Co.,* 160 Ariz. 223, 772 P.2d 577 (1989).

**3.** The same can be said in many other instances. For example, an insured injured by an uninsured motorist may be much better off than one injured by a motorist who is insured but has minimum limits. *See State Farm Mut. Auto.*

*Ins. Co. v. Eden,* 136 Ariz. 460, 666 P.2d 1069 (1983). A person injured by the combined negligence of two tortfeasors often is much better off than the victim of a single tortfeasor. A person injured while a passenger in the car of a host who has UIM coverage may be much better off than the same person injured while a passenger in his own car when he has rejected UIM coverage.

Our inquiry in this case should not be circumscribed by the attempt to eliminate disparate treatment resulting from the fortuitous circumstances that vary from case to case. Our inquiry, rather, is directed to the question of what the statutes require to be included in all policies and whether those statutes provide insurance carriers with latitude to insert exclusions, offsets, or escape provisions.

(emphasis added).[4]

We note also that the legislature has specifically outlined circumstances under which an insured is precluded from aggregating multiple coverages in A.R.S. § 20–259.01(F), which provides as follows:

> If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy, selected by the insured, shall be applicable to any one accident.

This stacking preclusion does not apply in this case because we are not dealing with multiple policies bought by one insured from one insurer.

The majority of courts that have considered UM excess/escape clauses similar to the one before us have found them to be unenforceable. 1 A. WIDISS, § 13.6, at 397. The cases in point deal with an insured who has not been fully indemnified for his or her loss. They refuse to enforce an other insurance clause that permits an insurer to reduce coverage provided within the scope of the insuring agreement merely because of the fortuitous availability of additional coverage from a different insurer. These cases reason that enforcing the escape clause would be contrary to the objectives underlying the statutory mandate requiring that all insurance policies issued or delivered in the state provide UM coverage. 8C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 5102.25, at 471–72 (1981); see also Herder, 156 Ariz. at 205, 751 P.2d at 521; Annotation, Combining Or "Stacking" Uninsured Motorist Coverages Provided In Policies Issued By Different Insurers To Different Insureds, 28 A.L.R.4th 362 (1984).

In Safeco Ins. Co. v. Jones, 286 Ala. 606, 243 So.2d 736 (1970), the Alabama Supreme Court was presented with a case almost identical to this. The Alabama statute was similar to A.R.S. § 20–259.01 but merely required the offer of UM coverage while ours mandates that UM coverage is included in all policies issued in this state. A.R.S. § 20–259.01. As in the present case, the host/driver's insurer paid the limit of its policy, and the insured then made demand for the UM coverage of his own policy. The insurer denied liability, relying on the escape provisions of its other insurance clause. In reversing the court of appeals decision holding the insurer not liable, the Alabama Supreme Court cited the "majority rule" [5] and held that it could not

---

**4.** In *Smith v. Pacific Auto. Ins. Co.,* 240 Or. 167, 400 P.2d 512 (1965), the court soundly rejected any notion that to prevent an insured from aggregating coverages would be inequitable as follows:

> The rule against multiple recovery was derived from fire-insurance cases. In the case of a loss by fire, the monetary loss is usually easily measured and in certain instances it can be shown that the total damage suffered by the plaintiff was less than the combined insurance proceeds sought to be recovered. However, in the field of life and accident insurance, the damages to the person are not readily measured in money and there is little likelihood of either fraud or profit through overinsurance. Furthermore, the mere assertion that one would seek out an accident with an uninsured motorist in order to collect upon someone else's insurance policy contains its own answer. In the case at bar, there is no reason to deny the insured the benefits for which he has contracted under his own insurance simply because he also has some incidental rights as a third party beneficiary under another person's insurance.

*Id.* 400 P.2d at 515.

**5.** In other cases where an insured attempted recovery under both the uninsured motorist coverages in a policy issued to him and a policy issued to the owner or operator of the host vehicle, the following courts held the insured could collect from multiple policies in spite of the other insurance clause in his policy or policies: *Travelers Indem. Co. v. William,* 119 Ga. App. 414, 167 S.E.2d 174 (1969); *Walton v. State Farm Mut. Auto. Ins. Co.,* 55 Haw. 326, 518 P.2d 1399 (1974); *Sloviaczek v. Estate of Puckett,* 98 Idaho 371, 565 P.2d 564 (1977); *Zurich Ins. Co. v. Hall,* 516 S.W.2d 861 (Ky.1974); *Blakeslee v. Farm Bur. Mut. Ins. Co.,* 388 Mich. 464, 201 N.W.2d 786 (1972); *Courtemanche v. Lumbermen's Mut. Cas. Co.,* 118 N.H. 168, 385 A.2d 105 (1978); *Motor Club of Am. Ins. Co. v. Phillips,* 66 N.J. 277, 330 A.2d 360 (1974) (noting at the time, Arizona was one of "only seven jurisdictions ... which after considering the effect of mandatory UM statutes, hold excess-escape clauses to be valid"); *Sloan v. Dairyland Ins. Co.,* 86 N.M. 65, 519 P.2d 301 (1974); *Turner v. Nationwide Mut. Ins. Co.,* 11 N.C.App. 699, 182 S.E.2d 6 (1971), *cert. denied* 279 N.C. 397, 183 S.E.2d 247; *Curran v. State Auto. Mut. Ins. Co.,* 25 Ohio St.2d 33, 266 N.E.2d 566 (1971); *Sparling v. Allstate Ins. Co.,* 249 Or. 471, 439 P.2d 616

"permit an insurer to avoid its statutorily imposed liability [for UM benefits] by its insertion ... of a liability limiting clause which restricts the insured from receiving the coverage for which the premium ha[d] been paid." *Jones*, 243 So.2d at 742.

Most courts that have considered the issue agree with *Jones*'s reasoning. *See* 1 A. WIDISS, § 13.6, at 397; 28 A.L.R.4th 253; n. 5, *supra*. They conclude that insurers violate the public policy embodied in the statutory UM insurance requirement by attempting to reduce or eliminate coverage when the insured has not been fully indemnified, even though the insured has received compensation equal to the minimum amounts specified by statute. 1 A. WIDISS, § 13.6, at 402. They also surmise that if the legislature had wished to provide protection only to the minimum statutory limits, it could have so provided in the statutory scheme. *Id.* Furthermore, when invalidating the other insurance clause, many courts have commented that it would be unconscionable to permit insurers to collect a premium for a coverage they are required by statute to provide, and then to avoid payment of a loss because of limitations they have themselves devised. *Id.* at 403. Lastly, most courts recognize the clause may be properly applied only to prevent duplication of benefits. *Id. See also id.*, nn. 16–19 with citations too numerous to repeat here; 8C J. APPLEMAN, § 5102.25; 3 R. LONG, LAW OF LIABILITY INSURANCE § 24.24, at 143–45 (1987); 12A G. COUCH, CYCLOPEDIA OF INSURANCE LAW § 45:628, at 77–78 (2d rev. ed. 1981).

We share these views. Our cases have not looked with favor on insurers' use of exclusions, offset clauses, other insurance clauses, excess/escape clauses, and the like to reduce or eliminate coverages the legislature has required insurers to provide their customers.[6] Over the last fifteen years, the legislature has made it quite clear that motor vehicle insurers must provide their customers with UM coverage and the right to purchase UM and UIM coverage insurance limits at least equal to the liability coverage. *See* A.R.S. § 20–259.01; *see also State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 782 P.2d 727 (1989) (describing statutory evolution). The UM and UIM statutes do not contain exceptions for the myriad of fine print exclusions, exceptions, excess and escape provisions that in previous years provided opportunities for both the finely sharpened quill of the ingenious draftsman and the skill of the adroit litigator.

The message we read in the statute, and the public policy that underlies it, is simply that each insurer must provide each insured with coverage in the manner and amount required in the statute. *See Wilson, Brown.* In this court's view, the exceptions permitted are those allowed by the statutes, not those insurers may put in the policy. The excess/escape provision is in the policy, but *not* authorized by the statute. Because it removes that which the statute requires to be in the policy, we hold the escape clause cannot be applied when the insured is not fully indemnified.

Because *Wade* was decided before the statutes evolved to their present form, to the extent it permits the use of the excess

(1968); *American Liberty Ins. Co. v. Ranzau*, 481 S.W.2d 793 (Tex.1972); *Landvatter v. Globe Sec. Ins. Co.*, 100 Wis.2d 21, 300 N.W.2d 875 (App. 1980); *Ramsour v. Grange Ins. Ass'n*, 541 P.2d 35 (Wyo.1975).

6. *See* the following cases voiding exclusions: *State Farm Mut. Auto. Ins. Co. v. Duran*, 163 Ariz. 1, 785 P.2d 570 (1989) (furnished for regular use exclusion applied to UIM); *Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 770 P.2d 324 (1989) (owned vehicle exclusion denying UIM coverage); *Employers Mut. Cas. Co. v. McKeon*, 159 Ariz. 111, 765 P.2d 513 (1988) (named driver exclusion as applied to UM coverage); *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985) (other vehicle exclusion denying UM coverage); for cases voiding offsets, *see: Spain, Herder;* those voiding excess/escape clauses: *Brown* (excess/escape and prorata limit as applied to UIM); *State Farm Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co.*, 149 Ariz. 179, 717 P.2d 858 (1986) (escape clause voided statute requiring that garagekeeper's policy be excess over all other insurance available to driver); *State Farm Mut. Auto. Ins. Co. v. Bogart*, 149 Ariz. 145, 717 P.2d 449 (1986) (escape clause in liability policy repugnant to excess clause so both provided primary).

clause to reduce or eliminate coverage the law now requires to be part of the policy, it is overruled.

### III. CONCLUSION

The legislature requires that insurers provide UM coverage. Our statute sets a maximum amount for UM recovery—it will not permit the injured party to receive damages in excess of those which he is "legally entitled to recover." *See* A.R.S. § 20–259.01. Where the insured has paid premiums for a particular limit that the statute entitles him to purchase, the statute contains no exception permitting an insurer to set a different limit by eliminating or reducing recovery below actual damages simply because another policy fortuitously also provides some coverage. Accordingly, we hold that State Farm's "other insurance" escape clause cannot be applied to the UM coverage in this case.

We vacate the court of appeals' decision and affirm the trial court's judgment. We remand to the trial court for proceedings consistent with this opinion.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.