908 P.2d 60

**Beverly TERRY, Plaintiff–Appellant,**

v.

**AUTO–OWNERS INSURANCE COMPA-NY, a mutual incorporation, domiciled in the State of Michigan, duly autho-rized to do business in the State of Ari-zona, Defendant–Appellee.**

No. 1 CA–CV 94–0268.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 5, 1995.

Robert F. Clarke, Phoenix, for plaintiff–appellant.

Sorenson, Moore, Evens, Marshall & Roc-co by J. William Moore and John S. Schaper, Phoenix, for defendant–appellee.

## OPINION

VOSS, Judge.

Appellant Beverly Terry (Terry) was in-jured in a collision with an uninsured motor-ist. Because she was on the job at the time of the accident, she received workers' com-pensation payments. Under the employer's uninsured motorist coverage, the insurer was entitled to reduce the uninsured motorist payment by the amount of workers' compen-sation benefits paid. Terry challenged this reduction, although she does not contend that the uninsured motorist coverage and work-ers' compensation benefits did not fully com-pensate her for her damages. The trial court ruled that the policy offset provision is enforceable in this case. We affirm.

## BACKGROUND

In October, 1987, Terry sustained serious and permanent injuries in an automobile ac-cident in which an uninsured motorist was at fault. Terry was driving a vehicle owned by her employer, L & S Report Service, Inc. (L & S). L & S insured the vehicle with appel-lee Auto–Owners Insurance Company (Auto–Owners). The uninsured motorist provisions of the policy, which had a $500,000 limit, covered Terry's damages. Because Terry was acting in the course and scope of her employment when the accident occurred, she also was entitled to workers' compensation benefits.

Terry and Auto–Owners settled her unin-sured motorist claim for $257,684.96. Be-cause the policy issued to L & S provided that any amount paid under uninsured mo-torist coverage would be reduced by any amount paid for the same injury under work-ers' compensation law, Auto–Owners with-held $47,684.96, the amount Terry had re-ceived in workers' compensation benefits. Accordingly, Auto–Owners paid Terry $210,-000. The settlement agreement allowed Ter-ry to seek a judicial determination of wheth-er Arizona law allowed Auto–Owners to take

an offset for workers' compensation benefits paid to Terry.

Terry filed an action seeking a judgment declaring that the offset provision in the policy was invalid and contrary to Arizona statutes and public policy. Auto–Owners moved for summary judgment, arguing that under Arizona law, particularly *Schultz v. Farmers Insurance Group of Companies,* 167 Ariz. 148, 805 P.2d 381 (1991), a nonduplication clause is enforceable so long as it does not deprive the insured of full recovery for the loss.

Terry's response to the motion and her cross motion for summary judgment argued that *Schultz* merely recognized that where the same insurer provides both medical payment and uninsured motorist coverage in the same policy, an offset is permissible so long as the insured receives full compensation. Terry asserted that the offset sought by Auto–Owners is prohibited in Arizona by *Allied Mutual Insurance Co. v. Larriva,* 19 Ariz.App. 385, 507 P.2d 997 (1973), and *State Farm Mutual Automobile Insurance Co. v. Karasek,* 22 Ariz.App. 87, 523 P.2d 1324 (1974). Both of those cases held that provisions reducing uninsured motorist coverage by the amount of workers' compensation received are invalid and against the public policy of the state.

The trial court granted Auto–Owners' motion for summary judgment and denied Terry's cross motion. Citing *Schultz,* it found the general rule to be that an insurance policy non-duplication provision is enforceable if applying the provision does not deprive the insured of full recovery for the loss.

The court entered judgment dismissing Terry's complaint. She timely appealed from the judgment. We have jurisdiction over Terry's appeal pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B).

## DISCUSSION

On appeal, Terry argues that *Schultz* does not support the trial court's conclusion because *Schultz* held only that an insurer may offset uninsured motorist benefits by the amount of medical payments made from the

same policy. In Terry's view, the *Schultz* court did not overrule *Larriva* or *Karasek,* but instead confirmed their holdings by stating that if the plaintiff had been in an accident with an insured motorist, she could have had double recovery of her medical expenses. Terry thus concludes that the holding in *Schultz* is limited to situations in which uninsured motorist payments are offset by the amount of medical expenses already paid under the same policy, and that workers' compensation offsets are governed by *Karasek* and *Larriva.*

The question before us is whether the conclusion in *Schultz* applies to a workers' compensation offset, notwithstanding *Larriva* and *Karasek.* We start our analysis with an examination of the case on which the holdings in *Larriva* and *Karasek* were based—*Bacchus v. Farmers Insurance Group Exchange,* 106 Ariz. 280, 475 P.2d 264 (1970).

In *Bacchus,* the issue was much like the one considered in *Schultz:* can an insurer deduct the payments it has made to its insured under the medical payments provision of the policy from payments it is obligated to make under the policy's uninsured motorist coverage? The uninsured motorist coverage in *Bacchus* was the statutory minimum amounts of $10,000 per person and $20,000 per occurrence. 106 Ariz. at 280–81, 475 P.2d at 264–65. One plaintiff was awarded $8,200 and the other $10,000. The insurer paid the awards but withheld $2,339.28 that it had already paid under the medical payments provision of the policy. *Id.* at 281, 475 P.2d at 265.

The Arizona Supreme Court held that the insurer was not entitled to take the offset. It concluded that a policy addition that provided extra protection for an additional premium could not be used by the insurer to reduce mandatory minimum coverage. In the court's opinion, the Legislature's intent in enacting the uninsured motorist coverage statute was "that each insured who availed himself of uninsured motorist coverage would have available *not less than* $10,000 per person and $20,000 per occurrence. Any attempt, by contract or otherwise, to reduce

any part of this amount is violative of the statute." *Id.* at 283, 475 P.2d at 267.

In *Larriva*, the plaintiff's husband, while on the job, was killed in a collision with an uninsured motorist who was at fault. 19 Ariz.App. at 386, 507 P.2d at 998. The plaintiff's damages were in excess of $10,000. She made a claim under her husband's uninsured motorist coverage, which had the statutory minimum limit of $10,000. Because the plaintiff received a lump sum payment from workers' compensation as well as continuing monthly payments, the insurer attempted to enforce a policy provision that any amount payable under the uninsured motorist coverage was to be reduced by the amount paid and the present value of all amounts payable under any workers' compensation law. *Id.*

Relying on *Bacchus,* the *Larriva* court did not allow the insurer to reduce the uninsured motorist coverage payment. It held that the provision reducing uninsured motorist coverage by the amount of workers' compensation was invalid and against the public policy of Arizona. *Id.* at 388, 507 P.2d at 1000.

The plaintiff in *Karasek* was operating a motorcycle while on the job when he was injured by an uninsured motorist. 22 Ariz. App. at 88, 523 P.2d at 1325. The workers' compensation benefits he received exceeded the $10,000 uninsured motorist coverage limit of his personal policy. The insurer denied the plaintiff's claim for payment under the uninsured motorist coverage based on a policy provision that allowed it to reduce any amount payable under such coverage by the amount paid by workers' compensation. *Id.*

The *Karasek* court also relied on *Bacchus* in deciding that an offset could not be used to reduce the statutory minimum of uninsured motorist coverage. *Id.* at 90, 523 P.2d at 1327. It concluded that A.R.S. section 23–1023(C), which gave the workers' compensation insurance carrier a lien against amounts recovered by the insured worker from a negligent third party, did not apply to prevent double recovery where the worker had bought his own uninsured motorist coverage. *Id.* at 89, 523 P.2d at 1326.

This progression of cases brings us to *Schultz.* The plaintiff there was injured in an accident with an uninsured motorist. The plaintiff's insurance policy provided uninsured motorist coverage in the required minimum amount of $15,000 and medical payments coverage of $5,000. 167 Ariz. at 148, 805 P.2d at 381. The policy contained a non-duplication endorsement providing that any amount paid under medical payments coverage would be applied against any other available coverage so that there would be no duplication of the medical payment benefit. The endorsement added, however, that a coverage limit would not be reduced below any amount required by law. *Id.* at 148–49, 805 P.2d at 381–82.

The plaintiff contended that the insurer was required to pay whatever amount she was entitled to receive on her uninsured motorist claim up to the $15,000 limit in addition to the $3,771.19 already paid under the policy for medical expenses. The insurer argued that the non-duplication endorsement allowed it to deduct the $3,771.19 from any amount the plaintiff was entitled to receive under the uninsured motorist coverage as along as she received full compensation. *Id.* at 149, 805 P.2d at 382.

The Arizona Supreme Court agreed with the insurer. The court first noted that although not directly applicable to the issue before it, A.R.S. section 20–259.01, which allows insurers to preclude "stacking" of policies or coverages, "demonstrates that Arizona public policy permits an insurer to preclude double recovery on multiple coverages." *Id.* at 149–50, 805 P.2d at 382–83.

Then, in a review of previous case law, the court discussed *Spain v. Valley Forge Insurance Co.*, 152 Ariz. 189, 731 P.2d 84 (1986), in which it held that an insured who was not fully compensated could recover under both liability and uninsured motorist coverage. The court noted that it had stated in *Spain* that "'if an insured has been fully compensated under the liability coverage, then these payments may be credited under the UM coverage to avoid a duplication of benefits.'" *Schultz,* 167 Ariz. at 150–51, 805 P.2d at 383–84 (quoting *Spain,* 152 Ariz. at 194 n. 5, 731 P.2d at 89 n. 5). This language from *Spain,* explained the *Schultz* court, is more restrictive than earlier language in *Bacchus,* which

does not address the subject of benefit duplication. *Id.* at 151, 805 P.2d at 384.

In examining holdings from prior cases, the *Schultz* court concluded that "[p]ublic policy mandates only that an insured be fully compensated, when possible, for damages incurred. We do not believe the Legislature sought to preclude insurers from contractually eliminating double recovery." *Id.* The court noted that had the plaintiff been in an accident with an insured motorist, she would have been entitled to recover full damages from the other driver's insurer as well as medical payments from her own carrier, thus realizing double recovery of her medical expenses. *Id.* at 151–52, 805 P.2d at 384–85. However, this fact did not limit the court's inquiry into whether statutory requirements left room for insurance carriers to include in their policies exclusions, offsets, or escape provisions intended to prevent double recovery of accident losses. *Id.* at 152, 805 P.2d at 385 (citing *Rashid v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 270, 273 n. 3, 787 P.2d 1066, 1070 n. 3 (1990)).

Based on its review of Arizona and other authorities, the *Schultz* court concluded that Arizona statutes do not invalidate a contractual non-duplication endorsement provided that application of the endorsement does not deprive the insured of full recovery for the loss suffered. The court emphasized that the cases that refused to apply clear non-duplication provisions involved insureds who had not been fully indemnified. *Id.*

Explaining that it "painted with too broad a brush" in *Bacchus* when it said that non-duplication endorsements were always unenforceable, the *Schultz* court overruled *Bacchus* to the extent it purported to hold non-duplication endorsements unenforceable even when inability to enforce the endorsements resulted in double recovery. *Id.* The court concluded:

> Enforceability of a non-duplication endorsement should not depend upon whether the endorsement is stated as a reduction of a required coverage or as a reduction of an optional coverage. The test, instead, is whether applying the endorsement denies full recovery for the insured's loss. To the extent applying such an endorsement deprives an insured of full recovery, it is unenforceable. However, a non-duplication endorsement is enforceable if it does not interfere with the insured's right to full recovery for her loss.

*Id.* at 152–53, 805 P.2d at 385–86.

Terry asserts that because the offset provision in the policy involved in her case deals with workers' compensation payments rather than medical payments coverage, her situation is controlled by *Larriva* and *Karasek* rather than *Schultz.* We believe, however, that the most important element for our consideration is whether applying the non-duplication provision, whatever its form, denies full recovery for the insured's loss. As to this element, Terry's case is more like the facts in *Schultz* than in *Larriva* and *Karasek* because there is no dispute between the parties that enforcement of the offset provision would not deprive Terry of full recovery for her damages.

Nothing in *Schultz* limits its holding to non-duplication clauses that apply to payments under coverages in the same policy. Instead, the court used broad language to indicate that the ultimate test of a policy provision that aims to prevent double recovery is whether application of the provision denies the insured full recovery for the loss sustained. If enforcement of the provision does not interfere with full recovery, the provision is enforceable.

Terry does not contend that her losses exceed the total payments of $257,684.96. With the payment of $210,000 from Auto–Owners and $47,684.96 from workers' compensation, she realized full recovery of her undisputed loss. Therefore, under the *Schultz* holding, the Auto–Owners' offset clause, which acts as a non-duplication provision, is enforceable in this instance because it does not deprive Terry of full recovery for her loss.

Terry argues that a number of courts in other jurisdictions have held that workers' compensation offset provisions are invalid as against public policy.[1] Auto–Owners re-

---

1.  *See, e.g., Jeanes v. Nationwide Ins. Co.,* 532 A.2d 595 (Del. Ch.1987); *Cano v. Travelers Ins. Co.,*

**250**

sponds that a number of other jurisdictions allow reduction of uninsured and underinsured motorist benefits where the offsetting coverage supplements or is in excess of the minimum uninsured motorist coverage and prevents a double recovery.[2]

Without discussing the rationales of these cases from other jurisdictions and the statutes they apply, we observe that they are inapposite where we have clear direction on the question at issue from our own supreme court. The *Schultz* holding applies here and controls our disposition of this appeal.

### CONCLUSION

In summary, we hold that application of the policy provision that reduces the uninsured motorist payment to Terry by the amount of workers' compensation benefits paid to her does not deprive her of full recovery and thus is enforceable. Accordingly, we affirm the judgment of the trial court in favor of Auto–Owners.

FIDEL and TOCI, JJ., concur.

656 S.W.2d 266 (Mo.1983); *Continental Ins. Co. v. Fahey*, 106 N.M. 603, 747 P.2d 249 (1987); *Chambers v. Walker*, 653 P.2d 931 (Okla.1982); *Selected Risks Ins. Co. v. Thompson*, 520 Pa. 130, 552 A.2d 1382 (1989); *Thamert v. Continental Cas. Co.*, 621 P.2d 702 (Utah 1980).

2. *See, e.g., Rudd v. California Cas. Gen. Ins. Co.*, 219 Cal.App.3d 948, 268 Cal.Rptr. 624 (1990); *Wilson v. Security Ins. Co.*, 213 Conn. 532, 569 A.2d 40 (1990); *Parker v. American States Ins. Co.*, 193 Ill.App.3d 671, 140 Ill.Dec. 558, 550 N.E.2d 40 (1990); *Fox v. Atlantic Mut. Ins. Co.*, 132 A.D.2d 17, 521 N.Y.S.2d 442 (N.Y.App.Div. 1987); *Dwight v. Tennessee Farmers Mut. Ins. Co.*, 701 S.W.2d 621 (Tenn.App.1985).