145 P.3d 638

**Jean CUNDIFF,
Plaintiff/Appellant/Cross–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant/Appellee/Cross–Appellant.**

**No. 2 CA–CV 2005–0209.**

Court of Appeals of Arizona, Division 2, Department B.

Oct. 27, 2006.

As Corrected Dec. 4, 2006.

---

Bruce A. Burke, Elliot Glicksman, and John L. Tully, Tucson, Attorneys for Plaintiff/Appellant/Cross–Appellee.

Bryan Cave LLP By J. Alex Grimsley and Lawrence G. Scarborough, Phoenix, Attorneys for Defendant/Appellee/Cross–Appellant.

*OPINION*

BRAMMER, Judge.

¶ 1 Jean Cundiff appeals from the trial court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company on her claim for a declaratory judgment that State Farm was not entitled to offset her workers' compensation benefits against her underinsured motorist insurance (UIM) coverage for injuries she had sustained. Cundiff's UIM coverage contained a provision permitting State Farm to offset benefits Cundiff received from workers' compensation from any UIM claim she made under her policy. The trial court ruled the offset provision was enforceable under Arizona law. State Farm cross-appeals from

the trial court's grant of summary judgment in favor of Cundiff determining that State Farm could not offset all her workers' compensation benefits and awarding her $11,109.04. We affirm the trial court's grant of summary judgment in favor of State Farm and reverse its grant of summary judgment in favor of Cundiff.

## Factual and Procedural Background

¶2 On review of summary judgment, we "view the evidence in the light most favorable to the party opposing the motion for summary judgment and draw all inferences fairly arising from the evidence in that party's favor." *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken,* 179 Ariz. 289, 293, 877 P.2d 1345, 1349 (App.1994).

¶3 Jean Cundiff, formerly a deputy employed by the Pima County Sheriff's Department, was injured while on duty in November 1997. Cundiff's patrol car was struck from behind by a vehicle driven by Elizabeth Kozma. Cundiff sustained neck and back injuries and was granted a medical retirement from the sheriff's department just over a year later. This accident was Cundiff's third work-related injury; she had been involved in automobile accidents in 1990 and 1991 that had also injured her spine.

¶4 At the time of the 1997 accident, Kozma had liability insurance coverage with a limit of $15,000 per person, and Cundiff had a State Farm policy that included UIM coverage with a $25,000 limit. Cundiff received workers' compensation benefits following the accident, including preretirement disability benefits of $11,109.35, medical expenses of $18,695.48,[1] and postretirement benefits of $482.95 per month. By settlement agreement, Cundiff also received the policy limit of $15,000 from Kozma's liability insurer, all of which was paid to her attorney and her

workers' compensation insurer pursuant to a lien imposed under A.R.S. § 23–1023(C).

¶5 Cundiff then sought payment of $25,000 in UIM benefits under her State Farm policy. State Farm contended the $15,000 payment from Kozma's insurer had fully compensated Cundiff and refused to pay any UIM benefits under its policy. As she was entitled to do under the policy, Cundiff requested arbitration of her claim. Before arbitration, State Farm informed Cundiff it was entitled to offset her workers' compensation payments against any amounts payable under the UIM coverage of her policy, relying on the policy provision that stated: "Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured under any worker[s'] compensation, disability benefits, or similar law."

¶6 At the arbitration hearing, Cundiff asserted she had $140,000 in damages. The parties agree Cundiff had included the $18,695.48 in medical costs already paid by her workers' compensation insurer in her list of damages but also had reduced her request for lost wages by $11,109.35, the amount of her preretirement disability benefit. The arbitrator awarded Cundiff "$40,000 as full compensation for her claim against [State Farm]."[2] The arbitrator also concluded her retirement had not been caused by the accident with Kozma but, rather, by "the preexisting condition in [her] cervical spine."

¶7 State Farm originally took the position that, considering Cundiff's postretirement workers' compensation benefits as part of its offset, she had been fully compensated by her workers' compensation insurer. After some negotiation, State Farm offered Cundiff $10,000 to fully settle the UIM claim, reasoning that, if the postretirement benefits were excluded, Cundiff had received $29,828.41 in workers' compensation benefits,[3] which left approximately $10,000 in remaining damages

---

1. Cundiff points out there is a "slight discrepancy in the record as to the precise amount of these medical bills." The parties both use $18,695.48, the amount the trial court stated in its judgment, instead of the $18,695.57 contained in the joint prehearing statement provided to the arbitrator.

2. State Farm does not argue it is entitled to offset any portion of Cundiff's settlement with Kozma.

3. State Farm's settlement offer stated that Cundiff had received $18,719.06 in medical benefits, not the $18,695.57 figure the parties had presented at arbitration. As we stated in footnote one, on appeal both parties use the figure from the trial court's judgment, $18,695.48.

under the arbitration award. Cundiff rejected the settlement offer. State Farm subsequently paid Cundiff that amount without requiring that she release her claim against it.

¶ 8 Cundiff then filed this action against State Farm for breach of contract and for a declaratory judgment that she and a putative class were "entitled to the full benefits of their uninsured and underinsured [motorist] coverage upon their claims without an offset" of any workers' compensation benefits. After Cundiff filed the action, State Farm paid her an additional $195.48 to correct an "apparent math error" in its earlier payment to her. State Farm counterclaimed for a declaratory judgment that the offset provision "lawfully prevents double recovery by an insured for a single loss," which the trial court later dismissed pursuant to stipulation.

¶ 9 After lengthy pretrial litigation, including motions for summary judgment filed by both parties, the trial court issued its judgment in October 2005. The court ruled "the offset provision is enforceable by State Farm as long as it does not interfere with [Cundiff's] right to receive full compensation for her loss." The court also determined "[t]he arbitrator's award of $40,000 represents the full compensation to which [Cundiff] is entitled for her loss." The court reasoned that the offset provision only permitted State Farm to offset duplicated benefits and "the arbitrator was not presented with any claims for lost wages already paid by worker[s'] compensation, [so] his award could not have included such wages." Thus, the court concluded State Farm could not offset "the $11,109.04 in [preretirement] disability benefits."[4] The court also found, pursuant to the parties' agreement, evidence of Cundiff's

medical bills had been presented to the arbitrator, the award included $18,695.48 in medical bills, and State Farm could offset those bills because they already had been paid by Cundiff's workers' compensation insurer. The court awarded $11,109.04 to Cundiff. This appeal and cross-appeal followed.

## Cundiff's Appeal

■ ¶ 10 On appeal, Cundiff contends solely that State Farm's offset clause violates the uninsured and underinsured motorist coverage statute, A.R.S. § 20–259.01, and thus, is unenforceable. On appeal from summary judgment, we review questions of law, such as the meaning and effect of statutes, de novo. *Parrot v. DaimlerChrysler Corp.*, 212 Ariz. 255, ¶ 7, 130 P.3d 530, 532 (2006). Section 20–259.01(G) defines UIM coverage as the difference between "the total damages for bodily injury or death resulting from the accident" and "the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident."[5]

¶ 11 Cundiff relies on *Allied Mutual Insurance Co. v. Larriva*, 19 Ariz.App. 385, 388, 507 P.2d 997, 1000 (1973), in which this court determined that a provision in an insurance policy "reducing uninsured motorist coverage by the amount of [workers'] compensation is invalid and is against the public policy of this state." *See also State Farm Mut. Auto. Ins. Co. v. Karasek*, 22 Ariz.App. 87, 90, 523 P.2d 1324, 1327 (1974) (finding workers' compensation offset invalid). The courts in *Larriva* and *Karasek* relied on *Bacchus v. Farmers Insurance Group Exchange*, 106 Ariz. 280, 282, 475 P.2d 264, 266 (1970), in which our supreme court rejected a UIM policy offset provision for medical ex-

---

4. State Farm asserts this "slightly inaccurate figure fell into use" after the trial court used it in a ruling. Cundiff, however, uses $11,109.35 throughout her briefs.

5. State Farm contends that workers' compensation insurance falls within the category of "liability insurance policies" for the purposes of calculating UIM benefits under A.R.S. § 20–259.01(G). State Farm relies on A.R.S. § 20–252(2), which defines "casualty insurance" to include, inter alia, "[w]orkers' compensation and employer's liability insurance." UIM coverage,

however, is not calculated from applicable casualty insurance but, instead, from applicable liability insurance. *See* § 20–259.01(G). And the definitions of "casualty insurance" in § 20–252 separately include, and thereby implicitly differentiate, "[l]iability insurance" and "[w]orkers' compensation ... insurance." § 20–252(1), (2). State Farm cites no authority, and we find none, that suggests workers' compensation insurance should be treated as liability insurance for the purpose of calculating UIM benefits under § 20–259.01(G).

penses paid under an automobile liability policy, stating "[p]ermitting offsets of any type would allow insurers, by contract, to alter the provisions of the statute and to escape all or part of the liability which the Legislature intended they should provide."

¶ 12 Our supreme court later overruled *Bacchus* in *Schultz v. Farmers Insurance Group of Cos.*, 167 Ariz. 148, 152, 805 P.2d 381, 385 (1991), again analyzing a medical expense offset provision. The court in *Schultz* concluded the " 'stacking' preclusion provision" contained in § 20–259.01(H), then subsection (F), although pertaining to "a different context" and "not directly applicable in" *Schultz*, "demonstrates that Arizona public policy permits an insurer to preclude double recovery on multiple coverages." [6] 167 Ariz. at 149–50, 805 P.2d at 382–83. The court noted "[t]he majority of Arizona cases that have considered [offset] clauses have found them unenforceable" but those cases "refusing to apply a clear policy provision deal with an insured who has *not* been fully indemnified." *Id.* at 152, 805 P.2d at 385. Stating it had "painted with too broad a brush in *Bacchus*," the *Schultz* court held "a non-duplication endorsement is enforceable if it does not interfere with the insured's right to full recovery for her loss." *Id.* at 152–53, 805 P.2d at 385–86. Therefore, given our supreme court's conclusion in *Schultz* and its explicit rejection of *Bacchus*, we find the underlying reasoning of *Larriva* and *Karasek* no longer persuasive.

■ ¶ 13 In a more recent case that Cundiff acknowledges is directly on point here, Division One of this court determined an offset provision in an insurance policy's uninsured motorist coverage, permitting offset by the "amount of workers' compensation benefits paid," is enforceable if it does not "deprive [the injured party] of full recovery." *Terry v. Auto–Owners Ins. Co.*, 184 Ariz. 246, 250, 908 P.2d 60, 64 (App.1995). The court there determined *Schultz* "control[led][the] disposition of th[at] appeal," *id.*, and noted that "the most important element for [a court's] consideration is whether applying the

non-duplication provision, whatever its form, denies full recovery for the insured's loss." *Id.* at 249, 908 P.2d at 63.

¶ 14 At oral argument in this court, Cundiff acknowledged that *Terry* is clearly applicable and squarely against her position. But she argues "the *Terry* decision is an aberration in Arizona law" and we should not follow it because it was wrongly decided. According to Cundiff, Division One essentially ignored the mandate of § 20–259.01(G) and misconstrued *Schultz* to conclude offsets between multiple policies issued by different insurers are valid under the statute.

¶ 15 Arizona courts "have long held that exceptions to coverage not permitted by [§ 20–259.01] are void." *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, ¶ 13, 9 P.3d 1049, 1054 (2000); *see also State Farm Mut. Auto. Ins. Co. v. Duran*, 163 Ariz. 1, 3, 785 P.2d 570, 572 (1989) ("Public policy then and now precludes an insurer from voiding coverage by an exclusion not permitted by the statute."). Cundiff asserts "nothing in the statute ... permits an insurer to enforce a worker[s'] compensation exclusion." The court in *Taylor* concluded:

> [Section] 20–259.01 means what it says: Where there is insufficient liability coverage available to compensate for the actual damages sustained, the named insured or a family member injured in or by the family car and by the negligence of another insured may turn to his or her UIM coverage to make up the difference between actual damages and the available liability coverage. We will not interline the [uninsured motorist] and UIM statutes to permit exclusions that have not been mentioned by the legislature.

198 Ariz. 310, ¶ 22, 9 P.3d at 1056–57. This statement, however, is difficult to reconcile with the court's conclusions in *Schultz* that "Arizona public policy permits an insurer to preclude double recovery on multiple coverages," 167 Ariz. at 150, 805 P.2d at 383, and that "[p]ublic policy mandates only that an insured be fully compensated, when possible, for damages incurred. We do not believe the

---

6. That provision states: "If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insur-

er may limit the coverage so that only one policy or coverage, selected by the insured, shall be applicable to any one accident." § 20–259.01(H).

legislature sought to preclude insurers from contractually eliminating double recovery." *Id.* at 151, 805 P.2d at 384. The court in *Taylor* did not question or overturn those conclusions. Moreover, the court also stated the "policy exclusion should be read solely to limit duplication of recovery, as opposed to completely eliminating UIM coverage," 198 Ariz. 310, ¶ 14, 9 P.3d at 1054, which is consistent with the court's determination in *Schultz* permitting contractual offsets.

¶ 16 Both *Schultz* and *Taylor* are factually distinguishable from this case. *Schultz* addressed UIM coverage and medical payments coverage available from a single insurer, 167 Ariz. at 148–49, 805 P.2d at 381–82, and Cundiff reasons that *Schultz* was therefore limited to "multiple coverages sold to the same named insured by the same insurance carrier" and that the offset permitted in *Schultz* "find[s] some legislative support in [§ 20–259.01(H)]." In *Taylor*, the insurer sought to apply an exclusion that would deny UIM benefits altogether to an insured under a policy that had already provided liability benefits. 198 Ariz. 310, ¶¶ 2–3, 9 P.3d at 1051–52. Thus, unlike the case before us, both *Schultz* and *Taylor* addressed multiple coverages under a single policy.

¶ 17 This case, however, is more like *Schultz* than *Taylor*. State Farm seeks to offset workers' compensation benefits. Workers' compensation insurance is not liability insurance as *Taylor* contemplated but, instead, more closely resembles the medical payments coverage addressed in *Schultz*— fault is irrelevant to the benefits available under both. And, unlike here, it was undisputed in *Taylor* that the policy exclusion would prevent the insured from being fully indemnified. 198 Ariz. 310, ¶ 2, 9 P.3d at 1051.

¶ 18 Nothing in *Schultz* suggests our supreme court intended to limit its holding to multiple coverages provided by a single insurer. Moreover, prior to *Schultz*, our supreme court had already suggested § 20–259.01 could permit offsets and exclusions involving more than one insurer. The *Schultz* court relied in part on *Brown v. State Farm Mutual Automobile Insurance Co.*, 163 Ariz. 323, 788 P.2d 56 (1989).

*Schultz*, 167 Ariz. at 151, 805 P.2d at 384. In *Brown*, the insured sought to recover her damages under two UIM policies, each issued by a different insurer. 163 Ariz. at 324, 788 P.2d at 57. One of the insurers sought to avoid payment, relying on an escape clause for excess coverage in the insurance contract. *Id.* The court held the clause was unenforceable "if applied so as to obviate or reduce the UIM coverage available to [the plaintiff] for her actual damages. Thus, to the extent her actual damages are not fully compensated, [she] is entitled to recover the limits of her ... UIM coverage." *Id.* at 329, 788 P.2d at 62.

¶ 19 Further, in *Rashid v. State Farm Mutual Automobile Insurance Co.*, 163 Ariz. 270, 271, 276, 787 P.2d 1066, 1067, 1072 (1990), the court invalidated a policy's other insurance escape clause for excess coverage that would have permitted the plaintiff passenger's insurer to avoid paying an uninsured motorist claim because another insurer for the host vehicle had already paid uninsured motorist coverage benefits in an amount equal to or greater than the passenger's uninsured motorist coverage limit. The court stated the statute did not "permit[ ] an insurer to set a different [policy] limit by eliminating or reducing recovery below actual damages simply because another policy fortuitously also provides some coverage." *Id.* The court noted that, when "[a] premium has been paid for each of the coverages and the insurance policy has been issued," recovery is permitted "under more than one coverage *until the claimant is fully indemnified.*" *Id.* at 273, 787 P.2d at 1069. The court in *Rashid* qualified its holding, stating, "Because [State Farm's escape provision] removes that which the statute requires to be in the policy, we hold the escape clause cannot be applied *when the insured is not fully indemnified.*" *Id.* at 275, 787 P.2d at 1071 (emphasis added).

¶ 20 *Schultz* permits an insurer to limit coverage to avoid double recovery, interpreting the statute to permit an exclusion or offset, provided an injured party is fully compensated for his or her actual damages. The applicable "test," the court in *Schultz* stated, "is whether applying the endorsement denies

full recovery for the insured's loss." 167 Ariz. at 153, 805 P.2d at 386. Given the qualified holdings of *Rashid* and *Brown,* this rule applies regardless of whether the insurer seeks to offset payments made under one of its policies or a different insurer's policy. Nothing in *Terry* violates this rule.

¶ 21 Cundiff next contends the workers' compensation offset *Terry* allows permits an insurer to avoid paying an insured full compensation. Cundiff reasons that full compensation is "the amount of money that the injured party could have recovered from the tortfeasor if the tortfeasor had adequate liability coverage." *See Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 192, 731 P.2d 84, 87 (1986) ("The statute establishes a public policy that every insured is entitled to recover under his or her [uninsured motorist] coverage the damages he or she would have been able to recover from a negligent uninsured driver had that driver maintained a policy of liability insurance with a solvent company."). Thus, Cundiff concludes she would be entitled to $40,000 in damages from Kozma in addition to any funds she received from her workers' compensation insurer. Cundiff argues both the collateral source rule and the plain language of § 20–259.01 prohibit an insurer from applying offsets that would reduce its liability below that amount. *See, e.g., Lopez v. Safeway Stores, Inc.,* 212 Ariz. 198, ¶ 13, 129 P.3d 487, 491 (App.2006) (compensation received from independent collateral source does not reduce damages recoverable from tortfeasor).

¶ 22 A provider of UIM insurance, however, is not "'the *alter ego* of the tortfeasor. It does not insure the tort-feasor against liability; it insures its policyholder against the risk of inadequate compensation for his compensable injuries.'" *Larriva,* 19 Ariz.App. at 387, 507 P.2d at 999, *quoting Comm'rs of State Ins. Fund v. Miller,* 4 A.D.2d 481, 166 N.Y.S.2d 777, 779 (1957); *see also Taylor,* 198 Ariz. 310, ¶ 18, 9 P.3d at 1055 ("[T]he purpose of … UIM coverage is to enable the consumer to protect himself

and family members against the possibility that, in any given accident, there will be no or insufficient liability coverage to compensate for the actual damages sustained."). The collateral source rule seeks to balance the goals of limiting an injured party's compensation "to the amount necessary to make him whole" and avoiding "a windfall to the tortfeasor if a choice must be made between him and the injured party." *Lopez,* 212 Ariz. 198, ¶ 26, 129 P.3d at 496. Because State Farm is neither the tortfeasor nor the tortfeasor's insurer, no such balance need be struck. Cundiff cites no authority, and we find none, suggesting a UIM insurer should be treated as a tortfeasor for purposes of the collateral source rule.[7] Thus, we conclude the collateral source rule does not apply and, consequently, the holding in *Terry* does not violate the rule in *Spain* that limits Cundiff to "the damages … she would have been able to recover from a negligent uninsured driver had that driver maintained a policy of liability insurance with a solvent company." 152 Ariz. at 192, 731 P.2d at 87.

¶ 23 Cundiff next maintains the holding in *Terry* is "adverse to legislative intent." She asserts *Terry* could allow insurance companies to offset benefits received from other sources, such as social security or medicare, and thus "effectuates a *sub silent[i]o* permission for insurers to contractually abolish the collateral source doctrine." The question of whether an insurer can offset such benefits, however, is not before us. And, as noted above, the collateral source doctrine does not apply to Cundiff's recovery.

¶ 24 *Terry* held that an insurer may enforce an offset clause reducing UIM benefits by the amount of workers' compensation benefits the insured has received if the insured is not deprived of full recovery. 184 Ariz. at 250, 908 P.2d at 64. "Absent a decision by the Arizona Supreme Court compelling a contrary result, a decision by one division of the Court of Appeals is persuasive with the other division." *Scappaticci v. Sw.*

---

7. Cundiff asserts *Samsel v. Allstate Insurance Co.,* 204 Ariz. 1, 59 P.3d 281 (2002), "reaffirmed the expansive scope of Arizona's collateral source rule." *Samsel,* however, interpreted the meaning of a contract provision in finding an automo-bile insurer liable for medical expenses paid by the insured's health care insurer and did not discuss the collateral source rule. *Id.* ¶¶ 8–9, 38, 59 P.3d 281.

*Sav. & Loan Ass'n,* 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983). Thus, we consider *Terry* to be " 'highly persuasive and binding, unless we are convinced that [it is] based upon clearly erroneous principles, or conditions have changed so as to render [it] inapplicable.' " *Id., quoting Castillo v. Indus. Comm'n,* 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974). Although we acknowledge both parties make persuasive arguments anchored in reasonable interpretations of the relevant cases decided by our supreme court, we cannot say *Terry's* reliance on *Schultz* is clearly erroneous, nor that *Taylor* compels a different result. And, because *Taylor* neither explicitly limited *Schultz* nor addressed *Terry,* we cannot say the law has changed. Accordingly, we follow *Terry.*[8]

### State Farm's Cross–Appeal

¶ 25 In its cross-appeal, State Farm contends the trial court's ruling awarding Cundiff $11,109.04 was an impermissible collateral attack on the arbitration award because the trial court "re-examine[d] that award and . . . conclude[d] that the Arbitrator's award failed to include a portion of the damages the trial court believed [Cundiff] should have been awarded." In response, Cundiff argues the parties did not litigate the amount of her full damages during arbitration and, instead, only litigated part of her damages, excluding those wage claims already paid by her workers' compensation insurer. She suggests the parties had an implied agreement to exclude those damages because State Farm was aware she was not asking to be compensated for lost wages already paid.

¶ 26 A trial court properly grants summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2; *Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). "On appeal from a summary judgment, we must determine de novo whether there are any genuine issues of material fact and whether the trial court erred

in applying the law." *Bothell v. Two Point Acres, Inc.,* 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App.1998). A trial court should only grant a motion for summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch.,* 166 Ariz. at 309, 802 P.2d at 1008.

¶ 27 The insurance policy at issue here mandates arbitration between the parties if they cannot agree on the amount of damages. The policy also states an arbitration award may be appealed; this would be pursuant to Rule 7 of the Uniform Rules of Procedure for Arbitration, now Rule 76, Ariz. R. Civ. P., 16 A.R.S., Pt. 2. *See* Ariz. R. Civ. P. 76 State Bar Comm. Note. Cundiff apparently did not appeal the award. Even if she had, the remedy on appeal is a trial de novo, not a modification of the arbitration award. *See* Ariz. R. Civ. P. 76(c).

¶ 28 "[A]n arbitrator's decision on questions of fact and law is generally final." *Steer v. Eggleston,* 202 Ariz. 523, ¶ 13, 47 P.3d 1161, 1164 (App.2002). Arizona law, however, provides several statutory methods for a party to contest an arbitration award. Section 12–1513, A.R.S., permits a party to apply for modification or correction of an award because of an "evident miscalculation," a decision on a matter not submitted, or errors of form "not affecting the merits of the controversy." An application under § 12–1513 must be made within ninety days "after delivery of a copy of the award to the applicant." Even if the statute would permit modification under these circumstances, we find nothing in the record suggesting Cundiff timely applied for one under § 12–1513, nor does the record tell us whether either party applied to the trial court for a confirmation of the award pursuant to A.R.S. § 12–1511. Alternatively, a party may oppose an arbitration award pursuant to A.R.S. § 12–1512. However, that statute does not permit a trial

---

**8.** We do not address Cundiff's argument that *Terry's* holding "encourages insurance companies to engage in mischief" by, in part, "overstat[ing][its] calculations of the offset." Even if

we concluded this were true, it would not render *Terry's* holding clearly erroneous. *See Scappaticci v. Sw. Sav. & Loan Ass'n,* 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983).

court to modify an award; it may only "decline to confirm and [sic] award and enter judgment." *Id., see Heinig v. Hudman*, 177 Ariz. 66, 73, 865 P.2d 110, 117 (App.1993) (Section 12–1512 only permits superior court to confirm or reject arbitration award). Again, nothing in the record shows Cundiff opposed the award pursuant to § 12–1512, and we do not know if either party sought to confirm the award under § 12–1511.[9]

¶ 29 Nothing in the arbitration award suggests the existence of an express or implied agreement between the parties to litigate something other than Cundiff's full damages. Indeed, the arbitration award gave Cundiff "$40,000 as full compensation for her claim against [State Farm]." This award is consistent with what the parties requested; the joint statement they filed with the arbitrator stated Cundiff sought "the full value of her claim." If there was any agreement between the parties to artificially limit the damages sought, it was their responsibility to ensure the final award reflected that agreement, either by asking the arbitrator to modify the award pursuant to A.R.S. § 12–1509 or by filing an application in superior court pursuant to § 12–1513 requesting modification of the award.[10]

¶ 30 Cundiff insists neither she nor the trial court has "ever attempted to collaterally attack the arbitration award." She reasons we should instead construe her action as litigation of "the issue of whether State Farm is entitled to an offset against any of the damages awarded at arbitration." We are unconvinced. The trial court determined the offset provision was legally enforceable and could be applied to part of the arbitration award. The court also determined Cundiff's preretirement disability benefits were not included in the award. Inherent in this ruling is an increase in the amount of Cundiff's damages. Thus, despite the arbitration award's clear language to the contrary, the court implicitly found the damages determined in the arbitration proceeding reflected something less than full compensation for Cundiff's damages. This modification is not permitted absent a timely motion under § 12–1513. Accordingly, we conclude the trial court lacked authority to give Cundiff the relief it did, and we reverse its grant of summary judgment in her favor.

### Disposition

¶ 31 We affirm the trial court's grant of summary judgment in favor of State Farm and reverse its grant of summary judgment in favor of Cundiff. According to the trial court's ruling, State Farm owes Cundiff interest on the amount it has already paid her.[11] Thus, we remand the case to the trial court with instructions to enter summary judgment in favor of Cundiff solely for that interest.

9. Unlike A.R.S. § 12–1513, § 12–1512 does not impose a statute of limitations. *Morgan v. Carillon Inv., Inc.*, 210 Ariz. 187, ¶ 4, 109 P.3d 82, 82 (2005). "A prevailing party has the ability to preclude the spectre of an unlimited limitations period for filing a motion to vacate an arbitration award by filing a motion to confirm the award pursuant to A.R.S. § 12–1511 (2003), thereby triggering the twenty-day limitation in which to file an opposition." *Id.* ¶ 4, 109 P.3d 82.

10. Cundiff suggests this situation is analogous to Rule 15(b), Ariz. R. Civ. P., 16A A.R.S., Pt. 1, which states: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The rule also provides that "failure ... to amend [the pleadings] does not affect the result of the trial of these issues." *Id.; see Elec. Adver., Inc. v. Sakato*, 94 Ariz. 68, 71, 381 P.2d 755, 756 (1963) ("When evidence is presented at trial which presents a new or different theory from that alleged in the pleadings, and the adverse party does not object to the introduction thereof, that issue is then tried by implied consent."). Unlike Rule 15(b), however, § 12–1513 requires a party to file a motion to modify an award and does not permit an implied modification.

11. State Farm contended at oral argument that it does not owe interest on the amount it has already paid Cundiff because it could also offset her ongoing postretirement workers' compensation benefits and, thus, in fact, owed Cundiff nothing. State Farm stated below, however, that it "chose not to take any offset for the postretirement benefits." The arbitrator found, and State Farm admitted, Cundiff's medical retirement "was due to [her] pre-existing condition" and was not a result of the accident with Kozma. Thus, State Farm has waived this argument and we do not consider it. *See Servs. Holding Co. v. Transamerica Occidental Life Ins. Co.*, 180 Ariz. 198, 208, 883 P.2d 435, 445 (App.1994) (party may not raise on appeal issue abandoned below).

CONCURRING: JOHN PELANDER, Chief Judge and PETER J. ECKERSTROM, Presiding Judge.

